LUCY HOXIE & others *vs.* LYDIA FINNEY.
SAME *vs.* ADELBERT C. FINNEY.

Plymouth.    October 16, 1888. — November 27, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Devise with Power to Sell — Reservation of Life Estate.*

A testator, by his will, "meaning and intending to make honorable and liberal pro-
vision" for his wife, devised to her an estate for life in his entire estate, "with
liberty to use and appropriate so much of the principal in addition to the in-
come as she may deem necessary for her comfort and support," with power to
sell "the whole or any part of" such estate "at her discretion," the remainder
after her death passing to his heirs at law. *Held,* that the wife might, in good
faith and without regard to the rights or interests of such heirs at law, reserve
a life estate in the real estate, and sell the remainder to obtain means for her
support.

TWO WRITS OF ENTRY, by heirs at law of Timothy Manter,
to recover parcels of land in Plymouth, sold and conveyed to the
tenants, under a power contained in his will, by Susan Manter,
his wife, by deeds which reserved to her "a life estate in the
premises."

The cases were tried together in the Superior Court, without
a jury, before *Thompson,* J., who ruled, as matter of law, that
Susan Manter did not have the right to sell the reversion and re-
tain a life estate in the demanded premises, and that the deeds
were invalid; and found for the demandants; and the tenants
alleged exceptions. The material facts appear in the opinion.

*B. F. Butler & C. G. Davis,* for the tenants.

*R. O. Harris,* for the demandants.

KNOWLTON, J. The second clause of the will of Timothy
Manter is in these words: "Meaning and intending to make
honorable and liberal provision for my wife, Susan Manter, dur-
ing her natural life, out of my estate, I do give and bequeath to
her the use and improvement of my whole estate, both real and
personal, of which I may die seised and possessed, with liberty
to use and appropriate so much of the principal, in addition to
the income, as she may deem necessary for her comfort and
support; and I do authorize and empower her to sell and dis-

pose of the whole or any part of my real and personal estate at
her discretion, without the necessity of a license, or of pursuing
any of the forms of law, and to change any investments and re-
invest from time to time at her discretion; and at her decease,
whatever shall then remain of my estate unexpended by my
said wife, I dispose of as follows, as also in case my wife dies
before me."

On account of the decease, in the testator's lifetime, of all his
legatees and devisees except his wife, the remainder after her
death passed to his heirs at law, among whom are the demand-
ants.   In both cases, the demanded premises are a part of the
real estate which belonged to him at the time of his decease,
and the tenants claim title under deeds given by Susan Manter,
in pursuance of sales made by her of the demanded premises,
reserving to herself in each case "a life estate in the premises."
She had an estate for life in the premises, with power to sell
at discretion, and authority to use the proceeds for her main-
tenance.   The facts found raise, in each case, the same two
questions as to the validity of each of the deeds in controversy.
First, Were the sales invalid because made without sufficient
regard to the rights or interests of the testator's heirs at law?
Secondly, Were they invalid because the conveyance in each
was only of the remainder after reserving a life estate to the
grantor?

The court found that Susan Manter made the deeds "for the
purpose of obtaining money for her support, and for the purpose
of providing for herself a maintenance for life," and that she
had no actual intent to defraud the heirs at law, but that she
"had no regard for their rights if any they had."   We must
construe this to mean, that she used her best judgment and dis-
cretion in disposing of the property, with a view to obtain from
it the maintenance and support to which she was entitled, with
no purpose to defraud the heirs, and with no particular regard
for their interests.   And we are of opinion that she lawfully
might do so.   Their rights under the will were only to that
which might remain unexpended at her decease; and she was
authorized to use of the principal what she might "deem neces-
sary for her comfort and support."   Her rights were paramount
to theirs, and so long as she acted in good faith in selling the

property for a purpose permitted by the will, she did not transcend her authority.

We are also of opinion, that, under the liberal provisions of this will, she might, in the exercise of the large discretion with which she was invested, retain for her use the life estate which was hers absolutely, and sell the remainder to obtain necessary means of support. In some cases that might be a disadvantageous way of selling, but in some it would not. In a supposable case, it might be the only way not inconsistent with the continuance of the comfort and happiness of the widow, — as where the real estate was her homestead exactly adapted to her needs for residence. In such a case it would be a harsh rule which would not permit her to sell the remainder to obtain money for her support, except upon the condition of giving up her home.

The sales under consideration in the cases at bar were quite unlike an attempt to mortgage where the power given was only to sell, as in *Hoyt* v. *Jaques,* 129 Mass. 286 ; and we think it was for the widow to decide whether to sell an estate in fee, or to retain her life estate and sell the remainder.

No questions have been raised as to the form of the deeds, if she was authorized to sell in this way, and it follows that the rulings at the trial were erroneous, and the entry in each case must be,                                        *Exceptions sustained.*