RICHARD H. REED ET AL. *vs.* CARRIE S. REED, EXECUTRIX.

First Judicial District, Hartford, January Term, 1908.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Technical rules as to the formation and determination of issues are not properly applicable to reasons of appeal from probate.

In disposing of an appeal from a probate decree adjusting an administration account, the Superior Court has all the powers of a Court of Probate in respect to settling the account on a proper basis.

A childless testator gave "the use, income and improvement" of all his property to his wife (who had none of her own) during her life, with the privilege of expending from time to time so much of the principal "as she may find necessary for her comfortable support and maintenance," with remainder in fee to his brother and the children of a deceased brother. He appointed his wife

sole executrix, without bonds, and gave her authority, as such, to sell and convey any real estate. Upon an appeal by the remaindermen from the allowance of her account as executrix, it was *held:*—

1. That the widow was expressly made the judge of how much of the principal it was necessary for her to use for her own support, and that so long as she exercised her opinion in that respect in good faith, her expenditures for that purpose could not be questioned, either by the remaindermen or by a court.

2. That mere extravagance or wastefulness in the expenditures of principal for her own support did not amount to bad faith upon her part.

3. That reasonable charges incident to the purchase and fitting up of a house for the widow were allowable against the principal, which would also have to meet subsequent payments for insurance, taxes and repairs—although these items were primarily chargeable to income—if the widow in good faith found that the remaining income was insufficient for her comfortable support.

4. That expenditures incurred in negotiating sales of property for the purpose of making improper reinvestments were properly disallowed.

5. That money paid out by the widow in defending proceedings brought by the remaindermen against her individually, were not allowable charges against the principal; but for expenses incurred in successfully repelling attacks upon her administration accounts, she might be entitled to a fair and reasonable credit.

Shares of stock in a trading company can never be a suitable investment for an executor or trustee to make, unless he has been invested with greater powers than are ordinarily incident to such a position.

A separable portion of a judgment to which no exception is taken, must stand.

The case of *Little* v. *Geer*, 69 Conn. 411, distinguished.

Argued January 15th—decided March 3d, 1908.

APPEAL from a decree of the Court of Probate for the district of Simsbury, brought to the Superior Court in Hartford County and tried to the court (*Curtis, J.*). The decree was one allowing the administration account of Carrie S. Reed, executrix of the will of George W. M. Reed, late of Tariffville, deceased, and refusing to remove her, or to require her to file a bond, or to appoint a trustee of the residuary estate. The Superior Court set aside the decree in part and re-stated the account. *Error in part.*

The will, which was admitted to probate in 1901, gave "the use, income and improvement" of all the residuary property to Carrie S. Reed, the testator's widow, "during her natural life, with the privilege of expending from time to time so much of the principal of said estate as she may find necessary for her comfortable support and maintenance," with remainder, upon her death, to his brother and nephews and nieces. Mrs. Reed was appointed executrix, no bond to be required of her as such, and given, as such, power to sell and convey any and all of his real estate.

The estate of the testator was wholly in personal property. After paying debts and charges, there remained as the residuary estate, as shown by her administration account filed in the Court of Probate in September, 1903, nothing but 550 shares of guaranteed preferred stock in the Pratt & Whitney Company. This was an unusually good investment stock, worth more than par and yielding an assured annual income of $3,300.

The executrix sold 220 of the shares, and at the time of the hearing of this appeal in the Superior Court the estate in her hands consisted of the remaining 330 shares, $5,000 in cash, and a house in Tariffville which she had bought in her name, as executrix, for $4,275, and was worth not over $4,000.

The balance of the estate Mrs. Reed had used for her own purposes, after having been advised that she had the right so to use it, and in the belief that she could use it at will. There was no reason whatever for the use of any of the principal of the estate for her support. It was not necessary for her comfortable support and maintenance. The income of the residuary estate, after deducting from it a reasonable compensation for her services as executrix, was sufficient to provide liberally for all her needs in a manner suitable to her condition in life and previous habits and style of living.

The account allowed by the Court of Probate she filed in July, 1906. A few weeks before, she had caused the

entire estate then remaining in her hands to be transferred into the name of one Ranney, a young man who had been several times convicted of larceny, for the purpose of turning it into cash through him, and making a re-investment in shares of a joint-stock corporation, engaged in trade, which it would not have been wise or proper to purchase as an investment of the estate. She took Ranney's note for the value of the house, secured by a mortgage upon it, which she had recorded a month later, and he endorsed the certificates for the shares in the Pratt & Whitney Company in blank, and left them with her, with his note for their value. Ranney in fact negotiated a sale of 100 shares of the Pratt & Whitney Company, delivered the certificate to the purchaser, received his check for the price, and endorsed it over to the executrix, but a transfer was stopped by an injunction procured by the remaindermen.

The reasons of appeal filed in the Superior Court set up, among other things, that (9) the residuary estate "yielded an income much larger than that which the said Carrie S. Reed had enjoyed during the life of her said deceased husband, the testator, and said income was more than sufficient for the comfortable maintenance and support of said Carrie S. Reed without using any portion of the principal of said estate"; (10) "said Carrie S. Reed, acting as executrix of said estate, has paid to herself as life tenant, in addition to the entire income, large portions of the principal of said estate not needed for her comfortable support and maintenance, and has used such payments for purposes other than for her comfortable support and maintenance"; and that (18) "said Carrie S. Reed is a wholly unsuitable, unfit and improper person in whose possession and control to leave said estate, and said Carrie S. Reed is neglecting the duties of executrix or trustee of said estate, and is wasting the estate in her charge."

In the answer filed by Mrs. Reed in the Superior Court, the reasons above set forth were denied, and it was averred that "since the death of the said George W. M. Reed and the appointment of said Carrie S. Reed as executrix of her

husband's estate, she has not lived in a more expensive manner than she did during the lifetime of her husband, but, on the contrary, has curtailed her expenses and her mode of living very materially and to a large amount, and all the money used or expended by her from the principal of said estate has been so used and expended for her comfortable support and maintenance as she had a right to do under the will of her husband."

After a hearing on the issues closed, the Superior Court, by an interlocutory judgment, ordered the executrix to file in that court an amended account, which she accordingly did.

In the final judgment the issues were found for those appealing from the decree of probate, and all their reasons of appeal were specially found true.

The Superior Court also found that "the defendant has been unduly wasteful in the management of said estate"; and "has no property of her own and is not financially responsible"; "that defendant is not a fit or suitable person to be left in charge of said estate unless proper and sufficient security is furnished to the remaindermen thereof;" and that "it is for the best interests of the defendant as well as the remaindermen that the defendant be restrained from using any of the principal of said estate."

The final judgment set aside the decree of probate, "except so much thereof as refused to remove the executrix"; ordered her as executrix to transfer to herself as life tenant under the will all the personal estate in her hands as executrix, upon her filing, within a reasonable time to be set by the Court of Probate, a probate bond for its safe-keeping and delivery to the remaindermen at her decease; in default of such bond, directed the Court of Probate to appoint a trustee to receive and manage the estate during her life, to whom, in that case, she was ordered to deliver it; restated the account of the executrix filed in pursuance of the interlocutory judgment, striking out several of the credits claimed in it and making other changes; and allowed it as restated.

*William H. Ely* and *William F. Alcorn*, for the appellant (defendant).

*Charles E. Perkins* and *Ralph O. Wells*, for the appellees (plaintiffs).

BALDWIN, C. J. The main question in this cause is as to the meaning of the testator's provision for his widow. He gave her a life estate in all that he should leave, " with the privilege of expending from time to time so much of the principal of said estate as she may find necessary for her comfortable support and maintenance "; and created a remainder over in favor of collateral relatives.

The remaindermen, who appealed from the probate decree, tendered in their reasons of appeal no other issue in regard to the character of Mrs. Reed's expenditures from the principal than that they were not needed for her comfortable support and maintenance, and were made by her for other purposes. Her answer denied these allegations, and also averred affirmatively that she had made the expenditure " wholly for her comfortable suppport and maintenance, as she had a right to do under the will."

The points thus presented to the court, if the allegations of the parties were to be treated as ordinary pleadings in civil actions, were simply, first, whether the moneys in question had been necessarily expended for the widow's comfortable support and maintenance ; and, second, whether she had a right under the will to expend them for that purpose. The Superior Court has found they were not so necessarily expended, and this is a conclusive finding of fact. It is obvious, however, from the memorandum of decision, that the court below regarded the controversy as turning on the true construction of the will, and was of opinion that, properly construed, it gave the widow no right to draw upon the principal, unless it should be in fact necessary for her comfortable support and maintenance. The parties to the cause have, in like manner, treated its decision in this court as one to be determined by the measure of power conferred upon her by the will, and we think

that, under the circumstances, we should pursue that course. Technical rules as to the formation and determination of issues are not properly applicable to reasons of appeal from probate. *St. Leger's Appeal,* 34 Conn. 434, 448.

The testator had no children. His confidence in the judgment and integrity of his wife was such that he appointed her sole executrix of his will, and dispensed with her giving a probate bond, as such. At the time when his will was executed his only property from which he could anticipate any material income was a large block of the capital stock of a manufacturing company by which he was employed. For two years it had paid no dividends, and there was then no prospect of its paying any in the near future, although a year or two later, and three months before his death, his stock was exchanged, upon a reorganization, for preferred and guaranteed stock in a new corporation, on which dividends were reasonably certain to accrue. His wife had no property of her own, and his first thought was to secure her comfortable support. But how was the amount which it might be necessary to provide for this purpose to be ascertained? He answered this question by making her the judge, and her own opinion the rule of decision. She was to receive whatever income his residuary estate might produce, with the privilege of taking also from the principal, from time to time, so much more as she might find necessary for her comfortable support and maintenance. Had he desired to limit her right of expenditure to such sums as should be necessary for her comfortable support and maintenance, a different and briefer form of expression would naturally have been employed. By the words used, whatever encroachments on the principal she might make, from time to time, for use in her support, she could rightfully make, provided she, acting in good faith, should be of opinion that they were necessary for her support in comfort. She could use the proceeds for no other purpose; but if used for what she, in good faith, deemed to be required for that purpose, her disposition of them could not be questioned by those interested

in remainder.  *Lawrence* v. *Beardsley*, 74 Conn. 1, 5, 49
Atl. 190; *Hoxie* v. *Finney*, 147 Mass. 616, 18 N. E. 593.

The case of *Little* v. *Geer*, 69 Conn. 411, 37 Atl. 1056,
on which the remaindermen seem especially to rely, is not
inconsistent with these conclusions.  The will there in
question gave the testator's widow the use of all his resid-
uary property during life or widowhood, and in case it
should "be insufficient for her comfortable and proper
maintenance and support," authorized the executor to sell
any portion of the principal which he should deem neces-
sary and "use the avails arising from such sale for her
proper and comfortable maintenance and support."  The
testator left children, to whom the remainder was given,
in specified and unequal shares, a power of sale being con-
ferred in that connection on the executor, to enable him
"the more easily to divide and distribute what shall remain
of my said estate on the decease or marriage of my said
wife, and which she shall not have used during her life or
widowhood."  By a codicil, his wife was substituted as
sole executrix, "without her giving bonds," and given
"the privilege of using as much of the principal as she may
desire for her comfort and maintenance with full power
and authority to sell and legally convey any of my estate
both real and personal as she may see fit, and to freely use
the avails thereof as long as she remains my widow."  Un-
der the circumstances of that case, we held that the testa-
tor evidently expected that there would be something left
after the death or remarriage of his widow, and intended
that his children should take something from his estate;
that the widow did not acquire an absolute interest in the
residuary estate; that so long as she should conduct rea-
sonably and in good faith, the amount which she might
appropriate for her own support must be left to her own
discretion; but that if she should indulge in wastefulness,
or should seek to appropriate more of the estate than was
reasonable for her support, she might be restrained by in-
junction.  The codicil and will were thus read as together
constituting one scheme of disposition, and the intent to

reserve something for the testator's children, upon either the widow's remarriage or death, was given due effect.

In the will now before us, the testator was childless, and in no part of it is there anything to indicate an intention to limit the honest discretion of the widow in taking from the principal whatever she might think necessary for her comfortable support, or to evince solicitude that something should be left for his collateral relatives.

The finding does not disclose anything amounting to bad faith on the part of Mrs. Reed. She has been extravagant and wasteful. She has expended an unreasonable amount in her support and maintenance. But so far as it was expended for that purpose, to procure what she herself deemed to be necessary for her comfortable support, her acts were warranted by the privilege which the testator gave her, in making her judgment regarding their necessity superior to that of any court.

No exception has been taken to the action of the Superior Court in allowing the executrix credit for the $4,275 paid for the house in Tariffville, the title to which was taken in her name as executrix. As that credit must stand, it follows that any reasonable charges incident to the purchase and to making the house, after possession was delivered, habitable in comfort, should also have been allowed. Subsequent payments for repairs, insurance and taxes, would be primarily chargeable against the income, but she could, in effect, throw them upon the principal, if she in good faith found the remaining income insufficient for her comfortable support.

Mrs. Reed, as the sole executrix of the will, had the right to sell out the shares in the Pratt & Whitney Company for the purpose of making suitable reinvestments. For a like purpose she had a right to sell the Tariffville house, for the purchase of which she had previously converted some of that stock. She incurred expense in endeavoring to negotiate such sales for the purpose of making an unsuitable investment. Stock in a joint-stock trading company can never be a suitable investment for an

executor or trustee to make, unless he has been invested with greater powers than are ordinarily incident to such a position. Her charges for expenditures of this nature were therefore properly disallowed.

So were her charges against the principal for moneys paid out in defending against the proceedings brought by the remaindermen against her individually for equitable relief. But for expenses incurred in repelling attacks upon her administration accounts she may be entitled to credit. It was her duty, as executrix, to dispose of the estate of the testator according to his will. As to this she stood in the same situation as if she were not, herself, the beneficiary, who was claiming the right to spend from the principal of the estate. Her main contention as to the rights attached to the life estate has been finally upheld, and what it fairly and reasonably cost to maintain it may properly be charged against the principal of the estate.

There is no merit in the exception taken to the interlocutory decree of the Superior Court by which Mrs. Reed was required to file in that court a new administration account, differing in certain material points from that allowed by the Court of Probate. The Superior Court, in disposing of the appeal, had all the powers of a Court of Probate in respect to settling the account of the executrix on a proper basis. *Mathews' Appeal*, 72 Conn. 555, 45 Atl. 170.

No exception has been taken by either party to so much of the judgment appealed from as does not relate to the settlement of this account, and the judgment is so far separable that it must stand, except so far as concerns the points covered by the reasons of appeal in respect to the proper mode of making such settlement.

There is error in that part of the judgment of the Superior Court relating to the settlement of the administration account therein filed, and such part of said judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.