ANNA N. HOOKER *vs.* CAROLINE HOOKER GOODWIN
ET AL.

First Judicial District, Hartford, January Term, 1917.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A testator gave his wife the use and income of all the residue of his estate "so long as she remains my widow," and, if the income shall not be sufficient for the support of herself and their children, authorized her to use "so much of the principal of said estate as may be necessary for that purpose." *Held:*—

1. That the widow became trustee of this estate and her successor in the trust possessed all the powers devolved by the will upon her as such trustee.

2. That such use of the principal was limited to what was necessary for the support of herself and children.

3. That the word "necessary" as thus used, meant all reasonable necessaries suitable to the situation and station in life of the life tenant as the widow of the testator.

4. That so long as the life tenant exercised a sound and honest discretion in her demand upon the principal for the necessary support of herself and children, that discretion continued whether she resigned the trust or not.

5. That the trustee of the life estate was bound to pay over to the widow, upon her application, such part of the principal as was necessary to furnish her reasonable and comfortable support.

6. That the trustee was not required to secure an order of court before making such payment.

7. That upon the facts disclosed by the record the widow was entitled to $1,000 of the principal for her support.

Under General Statutes, § 311, a life tenant of personal property is bound to give a bond to protect the interest of the remaindermen.

A testamentary trustee, unless excused by the will creating the trust (§ 383), must account annually to the Court of Probate.

A life tenant abusing the discretion vested in him, may be restrained by a court of equity.

A life tenant is bound, at his own expense, to maintain the real estate, including buildings, in a reasonable condition; and the cost of ordinary repairs, unless otherwise provided by the will, cannot be met by payments from the principal. The cost of permanent additions, however, if reasonable, may be proper charges against the principal.

Argued January 3d—decided February 21st, 1917.

APPEAL by the plaintiff from the refusal of the Court of Probate of the district of Berlin to authorize and empower the trustee on the estate of N. Albert Hooker, late of Berlin, to pay over to the plaintiff, a life tenant, $1,000 from the principal of said estate, taken to and tried by the Superior Court in Hartford County, *Case, J.;* facts found and judgment rendered in favor of the plaintiff, setting aside the decree of the Court of Probate, from which the defendant appealed. *No error.*

Mr. Frisbie, the trustee under the will of N. Albert Hooker, filed his account as such trustee with the Court of Probate for the district of Berlin, and petitioned the court, at the request of Mrs. Anna N. Hooker, for authority to pay over to her the sum of $1,000 out of the principal fund of the trust estate. The court denied the petition, and Mrs. Hooker took her appeal from the decree of denial.

Upon the trial it appeared that Mr. Hooker left a will, which was duly probated, and left surviving him his widow, the plaintiff, a son Henry, and a daughter Caroline, the defendant.

The will of Mr. Hooker, in clause two, provided as follows: "I give and bequeath to my wife Anna N.

Hooker the use income and improvement of all the rest, residue and remainder of my estate, including real, personal and mixed, so long as she remains my widow. If the income above given, shall not be sufficient, during the time aforesaid, for the support of herself and my children, then she may use, in addition to the income, so much of the principal of said estate, as may be necessary for that purpose." In case of re-marriage, the wife was given the use of one third, with remainder over to his children, and the other two thirds were given to his children. In case the wife should not remarry, all that remained of the estate was given to his children.

Upon the settlement of the estate there was set out to Mrs. Hooker as life tenant property of the appraised value of $35,996.

Mrs. Hooker qualified as trustee and acted as such up to April 14th, 1914, when she resigned, and Mr. Frisbie was appointed and qualified as such trustee.

Mr. Frisbie filed his account May 1st, 1915, and at the request of Mrs. Hooker petitioned the Court of Probate for authority to pay to her $1,000 because the income had not been sufficient for her comfortable maintenance and support. Mrs. Hooker has never remarried.

The personal estate had been increased by reason of the care, skill and self-denial of Mrs. Hooker, from $26,200 to over $130,000.

In his lifetime Mr. Hooker had a yearly income of nearly $8,000, and maintained a summer home in Berlin, with two servants, and horses, carriages and a coachman, and in the winter occupied comfortable apartments in New Haven in a boarding-house.

Since his death, Mrs. Hooker has lived in the winter in one room on the fourth floor of this boarding-house, and in the summer in the Berlin home, keeping one

servant and no horses. In the summer her expenses have averaged $200, and in the winter $150, a month. Mrs. Hooker has no other income except $200 a year. She is in her sixty-third year, her health is impaired, and she is under large expense on account of medical advice. The doctors have advised a change of climate, and that she do not go up and down stairs.

Mrs. Hooker, instead of selling the stocks, retained them, and by living prudently paid the expenses of the estate and its debts out of the income.

During the year preceding May 1st, 1915, Mrs. Hooker was obliged to expend $800 for repairs on the barn, which expenditures were for the sole benefit of the remainder interests of the estate.

Mrs. Hooker desires said $1,000 to use in putting in a bathroom in the house and in otherwise improving it so that she may make it her home for the entire year, and also to partially repay her for the $800 expended upon the barn.

The income of the estate for the year preceding May 1st, 1915, was $2,407.79, and for the following year $2,892.46. The estate pays Mr. Frisbie $200 a year for his services, and has paid $500 for a surety bond, and $100 for legal expenses. Mrs. Hooker has at present unpaid a board bill of $500 and doctors' and other bills amounting to $350.

The court found that the application for $1,000 was made in good faith and is a reasonable request in view of all the circumstances.

*Samuel A. Herman,* for the appellant (defendant).

*Albert H. Barclay,* for the appellee (plaintiff).

WHEELER, J. These provisions of the will gave to Mrs. Hooker as life tenant, while she remained the

widow of the testator, the entire income of this trust estate, together with the right to use "in addition to the income, so much of the principal of said estate, as may be necessary for that purpose." She, by appointment of the Court of Probate, became the trustee of this life estate, and upon her resignation and the appointment and qualification of Mr. Frisbie he entered upon his duties as trustee possessed of all the powers devolved by the will upon Mrs. Hooker as such trustee.

The testator anticipated that there would be a remainder interest upon the decease or remarriage of his wife, and this he left to his children.

He placed a limitation or restriction upon her right to use the principal, and that was that such use must be necessary for the support of herself and children. The term "necessary," in a connection such as this, is a variable one, and restricted or enlarged by the surrounding circumstances. Applied to Mrs. Hooker, it meant all reasonable necessaries suitable to her situation and station in life, having especial reference to the fact that she would be the widow of Mr. Hooker.

Concerning the provision of a will, "Should it be necessary for their personal comfort to use any portion of said property," etc., we said: "The right to resort to the principal was founded on necessity and restricted by necessity," and meant, "as in the case of the obligation of a husband to furnish necessaries for his wife." *Peckham* v. *Lego*, 57 Conn. 553–556, 19 Atl. 392. In *Hall* v. *Culver*, 34 Conn. 403, 405, where a wife gave her husband a power of disposal "if he should want for his support to sell any part or the whole for his maintenance," we held that "the sale is to be proportioned to the extent of the necessity." In *Little* v. *Geer*, 69 Conn. 411, 415, 37 Atl. 1056, the codicil gave to a wife "the privilege of using as much of the principal as she may desire for her comfort and maintenance," and the will

gave the executors power to sell the estate and use the avails for the proper and comfortable maintenance and support of the wife in case the income "be insufficient for her comfortable and proper maintenance." We held that "the widow is confined to what she may require 'for her comfortable and proper maintenance and support.'" In *Russell* v. *Hartley*, 83 Conn. 655, 78 Atl. 320, the will provided: "And if in the judgment of said trustee she shall need more than the income thereof, then I authorize my said trustee to pay over to her from time to time such portion of the principal of said trust as he may deem necessary for her comfortable support." We held that the trustee's "authority to pay over the principal is limited by the purpose named, viz: 'for her comfortable support.'" We further held that the widow might in her discretion appropriate so much of the income as was "reasonable for her support as stated in the will." And we had previously determined that reasonable support under those circumstances meant a maintenance in a manner suitable to her station and condition of life under the circumstances and situation presented in each case. We distinguished, in *Reed* v. *Reed*, 80 Conn. 401, 409, 68 Atl. 849, that case from *Little* v. *Geer*, 69 Conn. 411, 415, 37 Atl. 1056, and held that in the first case there was nothing in the will "to indicate an intention to limit the honest discretion of the widow in taking from the principal whatever she might think necessary for her comfortable support, or to evince solicitude that something should be left for his collateral relatives," while in the latter case the contrary appeared.

So long as Mrs. Hooker, as the life tenant, exercised a discretion within the law and confined her demand upon the principal to so much as might be necessary for the support of herself and her children, her discretion could not be interfered with. This discretion the testa-

tor gave her as the life tenant, and that disposition of the estate which he made will be the guide for the trustee, and for the court, when called upon to advise the trustee, or to pass upon his administration of the trust. And when Mrs. Hooker resigned as such trustee, her successor assumed the trust charged with the same duties and vested with the same power and discretion as his predecessor in the trust.

When a trustee vested with a discretion of this character is about to violate his trust, or has already done so, the law furnishes relief to the remainder interest. The trustee is, unless the will otherwise provides, under bonds (General Statutes, § 311) "to safely and properly keep such estate to be delivered to the person entitled to receive it on the determination of the life estate therein."

The trustee of Mr. Hooker is bound to account annually to the Court of Probate for his trust. So must every testamentary trustee unless excused by the will creating the trust. General Statutes, § 383. At the accounting, parties in interest may question any item of the account and the court must determine which payments from the principal, if any, shall be allowed, and which disallowed; and its decision must conform to the rule long since adopted by us as to what will be necessary support for the widow and her children in the light of the circumstances present. We pointed out another remedy for the remainderman in *Little* v. *Geer*, 69 Conn. 411, 415 (37 Atl. 1056): "So long," said ANDREWS, C. J., "as the widow conducts reasonably and in good faith, the amount she may appropriate for her own support must be left to her own discretion. If, however, she should indulge in wastefulness, or should seek to appropriate to her own use more of the estate than is reasonable for her support as stated in the will, then she may be restrained by a court of equity

on the complaint of any of the remaindermen." *Russell* v. *Hartley,* 83 Conn. 655, 78 Atl. 320.

It follows from what has been said that the conclusion of the trial court, that Mrs. Hooker is the sole judge of what is a sufficient support for herself and children, and its holding that the existence of a finding of necessity to authorize the use of any of the principal for the life tenant's support was not required by the will, were erroneous. But that the conclusion of the trial court that so long as Mrs. Hooker exercises a sound and honest discretion in her demand upon the principal for the support of herself and children the court could not deprive her of that discretionary power, was correct, if the support was confined to that which was reasonably necessary for her station and condition of life. So too, the court was correct in ruling that Mrs. Hooker retained her discretionary power after her resignation. And it was correct in determining that the use of the principal by Mrs. Hooker was not conditioned upon proof that the income was insufficient for her support.

The trustee of the life estate was bound to pay over to Mrs. Hooker upon her application such part of the principal as was necessary to furnish her reasonable and comfortable support. He was not required to await an order of court, otherwise the very purpose of the testator might have been defeated and his widow been deprived of the continued support from all of his estate if its use became necessary during the pendency of the court application.

The trustee took the precaution to apply to the court for authority to comply with Mrs. Hooker's request for a payment of $1,000 from the principal. The Superior Court has, on this appeal from the Court of Probate, rendered its judgment authorizing this payment; and we are now called upon to determine whether such payment, or any part of it, was necessary for Mrs.

Hooker *v.* Goodwin.

Hooker's comfortable support, judging this by her station and condition in life.

The life tenant is bound to maintain the real estate, including the buildings, in a reasonable condition. The repairs of the barn, so far as the finding shows, come under this head, that of ordinary repairs, and their cost cannot be met by payment from the principal.

The bathroom will be a permanent addition to the house, and it would appear to be a reasonable expense for the trustee himself to incur out of the principal.

Upon the finding, the income from the estate has not been sufficient for Mrs. Hooker's support for the past two years, and she was at the time of her application in debt for necessaries to the amount of $850. Mrs. Hooker has not lived extravagantly or wastefully, but prudently and with reasonable economy. She is under medical care, and under the circumstances as detailed in the finding we think the trial court was correct in its conclusion that "the application of said Anna N. Hooker for $1,000 from the principal fund of said estate was made in good faith and is a reasonable request in view of all the circumstances and was within her discretion as life tenant."

There is no error.

In this opinion the other judges concurred.