HENRY D. PETERS, ADMINISTRATOR, *vs.* GEORGE FREDERICK ABBOTT, ADMINISTRATOR.

Third Judicial District, Bridgeport, October Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A life estate created by will is not to be enlarged to a fee, merely because a power of sale, however general or extensive, is coupled with it.

If the life tenant see fit to sell the property so devised, he is bound, like any other trustee, to exercise the utmost good faith, and to use due diligence in obtaining the full market value of the property at the time of its sale; otherwise he is guilty of a breach of trust for which he, or in case of his death his estate, is responsible in damages.

In the present case a testatrix devised the residue of her property to her husband for and during his life, without bond, with full power to sell and dispose of it as if he owned it absolutely; but required the proceeds to be held during the devisee's life as if no sale had been made. Subsequent clauses of the will disposed of the property in fee after her husband's death to cousins of her own blood. The real estate so devised was inventoried at $9,100 in 1905, when the testatrix died, but ten years later, when sold by the husband to his sister and her son—ostensibly at the inventory figure—was worth on the market $25,000 or more. In point of fact the husband virtually gave the property away, as he received nothing from the grantees except a receipt for $500 which he personally owed to his sister. The husband died in 1916 and his adminis-

Peters *v.* Abbott.

trator filed a final account in which the husband's estate was charged with $9,100 only. The Court of Probate, and the Superior Court on appeal, refused to accept this account, and the husband's representative appealed to this court. *Held:*—

1. That the husband took a life estate only, having no right to appropriate any portion of the principal to his own use or benefit.

2. That the power to "sell and dispose " of the property of which he took the income, when read in connection with the direction as to the "proceeds," and with the subsequent clauses of the will in which the testatrix herself gave the entire principal to her own relatives, merely gave her husband the right to sell for the purpose of convenience in the management of the property, and not the technical right of appointment, that is, to determine to whom such property should go upon his decease.

3. That the conduct of the husband in selling the property for $9,100, when it was in fact worth $25,000 or more, as he must have known, was a clear violation of his duty as a trustee, and justified the action of the lower courts in refusing to accept the trustee account until it was amended by charging the husband's estate with the market value of the property sold.

4. That the procedure followed below was entirely proper for the protection of the trust fund, and therefore it became unnecessary to determine whether an action would lie against the grantees of the real estate to have their deeds cancelled.

Argued October 30th, 1919—decided March 5th, 1920.

APPEAL from an order and decree of the Court of Probate for the district of New Haven refusing to accept the account of a testamentary trustee as rendered by his administrator, the plaintiff, and requiring its amendment, taken to and tried by the Superior Court in New Haven County, *Curtis, J.;* facts found and judgment rendered in favor of the defendant, dismissing the appeal, from which the plaintiff appealed. *No error.*

*Edmund Zacher* and *Matthew A. Reynolds,* for the appellant (plaintiff).

*Burton Mansfield* and *Osborne A. Day,* for the appellee (defendant).

GAGER, J. Lydia S. Dickerman died testate in 1905. By the first fourteen clauses of her will she disposed of $27,000 of her property, of which $5,000 was given absolutely to her husband, Robert Dickerman. By the 15th clause of her will Mrs. Dickerman gave her husband the life use of the residue of her estate with the power of sale. The 15th clause of the will, out of which the present controversy arises, reads as follows: "Fifteenth. I give, devise and bequeath the use, income and improvement of all the rest, residue and remainder of my estate, of whatever name and nature and wherever situated to my husband, Robert Dickerman, for and during his life, without bonds, and with full power to sell and dispose of any or all of said rest, residue and remainder, at any time, as fully as if he owned the same absolutely. The proceeds of any and all such sales however, to be held, during his life, as in this article hereinbefore provided for said rest, residue and remainder, before any sale thereof."

By the remaining clauses of her will Mrs. Dickerman disposed of all the rest, residue and remainder, after the death of her husband. The several parcels of real estate constituting the subject-matter of this appeal were a part of the rest, residue and remainder of which Mr. Dickerman was given the life use, and were together inventoried in her estate at $9,100. Mr. Dickerman as trustee held this real estate, together with the remainder of the trust fund, until 1915. On October 14th, 1915, Dickerman, then about eighty years of age, but with mentality unimpaired so far as the finding shows, went to one of his two sisters, Dency H. Peters, and agreed with her and her son, Henry D. Peters, to sell to them the real estate remaining unsold, at the inventory valuation, and accordingly did convey to his sister Dency, by absolute conveyance with the usual covenants of

warranty and title, and no reservation of a life use, certain parcels of said real estate inventoried at $8,200, for the expressed consideration of $8,200, and conveyed by like deed the remaining parcels of land inventoried at $900 to Henry D. Peters, his sister's son, for the expressed value of $900. Mr. Dickerman remained in possession until his death and these deeds were not recorded until the day of his death. Nothing was in fact ever paid for said land by the transferees, except that his sister Dency gave Mr. Dickerman a receipt for $500 which he then owed her. Mr. Dickerman died July 18th, 1916.

The appellant, Henry D. Peters, was appointed administrator upon Mr. Dickerman's estate, and as such administrator filed a trustee account under the 15th clause of the will, in which Mr. Dickerman was charged with $9,100, the inventory valuation of the real estate sold. It appeared and was found by the Court of Probate that this real estate, so charged at $9,100, was at the time of the sale worth not less than $24,990, and for this reason the Court of Probate refused to accept the trust account. The Superior Court, on appeal, found the same value, sustained the action of the Court of Probate and dismissed the appeal.

The question, therefore, is whether Mr. Dickerman, under the 15th clause of the will, could sell and dispose of real estate, of which he had the life use, of the value of $24,990 for the sum of $9,100, without accounting to the trust estate for the difference of $15,890. The answer depends upon the construction to be given to the 15th clause of the will in the light of the remaining provisions of the will, and the surrounding circumstances if pertinent.

In the language of the will there is no apparent uncertainty or confusion with reference to the absolute

gifts to Mr. Dickerman and the life use. By the 5th clause the testatrix gives $5,000 to her husband "absolutely and forever." After making legacies of $27,000 in prior clauses of the will, she, by the 15th clause, gives to him "the use, income and improvement " of the residue of her estate "for and during his life." Then, after giving him the power of sale, she says: "The proceeds of any and all such sales however, to be held, during his life, as in this article hereinbefore provided for said rest, residue and remainder, before any sale thereof." Then, in the 16th and succeeding clauses, she gives certain legacies "to be paid out of the residue of my estate after my husband's death." So far there is no possible ambiguity or uncertainty. Mr. Dickerman is made trustee, without bonds, of the residue of Mrs. Dickerman's estate, the gift to him in express terms being only of the use, income and improvement, and upon his death this residue is to be given as provided in clause 16 to the end of the will. Mr. Dickerman's beneficial interest is no more and no less than it would have been had a third person been made trustee in the usual form to pay over the use, income and improvement of the fund to Mr. Dickerman during his lifetime, and upon his death the residue to be distributed as provided in the will.

But the clause in question contains a further provision that Mr. Dickerman shall have "full power to sell and dispose of any or all of said rest, residue and remainder, at any time, as fully as if he owned the same absolutely." The appellant, in his brief, referring to this provision, says: "Under this power we submit that Robert Dickerman had the right to sell said real estate for any figure he chose; that there was no obligation on him to secure any price therefor, and that he had the power to give the same away without any

consideration." In other words, the appellant contends that this power of sale, couched in the above language, operates to create in Mr. Dickerman a beneficial interest in the principal of the fund so that practically he has the power of an owner in fee of the property. We cannot agree with this interpretation. Mrs. Dickerman evidently had not this consideration in mind, for she expressly provides that the proceeds of said sale or sales shall be held during his life, "as in this article hereinbefore provided for said rest, residue and remainder, before any sale thereof"; and then makes disposition of the residue of her estate, being the estate of which Mr. Dickerman had a life use, after her husband's death. She clearly contemplated, and in express terms provided for, the continuance of the fund, originally created out of the residue of her estate, as one and the same fund, however its form might be changed as a result of sales.' It is a matter of common knowledge to provide, in connection with the creation of a trust, that in case the income is insufficient for the defined purposes a portion, or even the whole, of the principal, under conditions named, may be used to enlarge the beneficial interest of the *cestui que trust* beyond the life use and income. But there is not a word or suggestion of such a thought in the language of this will, unless it arises by inference from the use of the words "sell. and dispose of . . . as fully as if he owned the same absolutely." We do not think these words, taken in connection with the directions as to the proceeds, do any more than create a power of sale for the purpose of convenience in the management of the principal of the fund; and the power is so drawn that no question can arise as to the validity of a deed executed by Mr. Dickerman in reliance upon this provision. They mean no more than the common phrase in a trust instrument

giving the trustee power to hold, manage, sell, invest and reinvest the fund. "The power of sale may, in doubtful cases, aid in ascertaining the intention; but to give it an artificial and technical force and thereby defeat the expressed intention of the testator, is wholly inadmissible." *Glover* v. *Stillson*, 56 Conn. 316, 318, 15 Atl. 752. In that case the testator gave certain property to two sisters for their natural lives, "hereby empowering my said sisters to dispose of any portion of my estate, either real or personal, if they should so desire." The testator then provided for the disposition of the property "after the decease of both of my said sisters." It was claimed that this power enlarged the life estate to a fee, but the court held that this provision did not so enlarge the life estate, and that the life tenants were simply authorized to change the investment if they desired. That Mrs. Dickerman did not intend to add anything to the life use is expressly indicated by the direction as to how the proceeds of the estate should be held, and by its disposition after the death of her husband. The part of the clause now in question confers an unequivocal power of sale whenever Mr. Dickerman, the life tenant, should see fit. The words "disposed of" and "as if he owned the same absolutely," relate to the extent of his power to give a good deed, but do not authorize any diversion of the proceeds out of the rest, residue and remainder thereafter disposed of. To give the claimed construction would be contrary to the latter part of clause 15 and to the remaining clauses of the will. Mrs. Dickerman's scheme of disposition of the rest, residue and remainder required a life estate in her husband, and upon his death a division of that same residue of which he had the life use, and the husband had no interest in or power over this residue further than the power to sell and hold the proceeds

as had been provided for the principal fund. *Lewis* v. *Palmer*, 46 Conn. 454. In *Mansfield* v. *Shelton*, 67 Conn. 390, 35 Atl. 271, the court, after an examination of the Connecticut authorities and others, stated certain propositions as well settled law in this State, the second of which, pertinent here, was the following (p. 394): "A life estate expressly created will not be converted into a fee, absolute or qualified, or into any other form of estate greater than a life estate, merely by reason of there being coupled with it a power of disposition, however general or extensive."

We have examined the cases cited by the appellant and they all appear to be inconsistent with the interpretation he claims should be put upon the clause here in question, because they all contain some expression clearly indicating the power to use the principal or some part of the principal of the fund for the benefit of the one entitled to the life use. In *Reed* v. *Reed*, 80 Conn. 401, 68 Atl. 849, a childless testator gave his wife "the use, income and improvement" of all his property during her life, with the privilege of expending from time to time so much of the principal "as she may find necessary for her comfortable support and maintenance," together with a power of sale. In *Lawrence* v. *Beardsley*, 74 Conn. 1, 49 Atl. 190, the will gave the wife a life use with "full power and authority to sell or dispose of" a certain piece of property, "and I give her permission to use any portion of the proceeds of such sale that she may deem necessary for her support." In *State* v. *Smith*, 52 Conn. 557, the power was "to sell, dispose of, convey, and use the same, without any restrictions whatever, during her natural life," and then provides for the disposition of "what remains." The court held this language gave the wife entire dominion over the land during her life. This construction arose from the incorporation with the sale provision of the

power to use without any restriction whatever; and the limit of the property left to be disposed of was expressed by "what remains;" and whether anything would remain was held to be conditioned on her not having used the property during her life. But, as we have seen in the present case, the will provides that "the proceeds of any and all . . . sales" shall "be held, during his life, as in this article hereinbefore provided for said rest, residue and remainder, before any sale thereof"; and of course before any sale it was to be held as a trust fund with the use and income only belonging beneficially to Mr. Dickerman. In *Hoxie* v. *Finney*, 147 Mass. 616, 18 N. E. 593, the will gave a life estate to the wife "with liberty to use and appropriate so much of the principal . . . as she may deem necessary for her comfort and support," with power to sell at her discretion. *Cummings* v. *Shaw*, 108 Mass. 159, turns upon the question of the power to convey only, which is unquestioned in this case. We find nothing whatever in the authorities cited by the appellant, and nothing in the language of the will, which gives Mr. Dickerman anything more than a life use of the residue of his wife's property, with full power to sell and convey and give good title, for the convenience and protection of the principal fund, holding the proceeds as the property sold was provided to be held: as a trust fund. If he sells property of the estate he cannot appropriate the proceeds and so diminish the residue, but must account for the proceeds on settlement of his trustee account.

The appellant further claims that whatever view may be taken of the 15th clause of the will Mr. Dickerman, if alive, and his estate after his death, can be held accountable only for the figure at which the estate was in fact sold, in the absence of any finding of *mala fides* or fraud on his part. In other words, his account having

been charged with the full value of the property as inventoried in 1905, he has only to make that value good upon final settlement of his trustee account. Had the property not been sold by him and remained in specie, no question could have arisen and it would be, so far as his account was concerned, a matter of indifference whether its value had appreciated or depreciated. He was under no obligation to sell, and he was holding the principal for the benefit of those to whom Mrs. Dickerman had given the property upon his death, and was holding for his own account to the extent of the income. What a third-party trustee could have done he could do, and he could lawfully do no more. The duties of a trustee are summarized in Cleaveland, Hewitt & Clark's Probate Law & Practice, § 137: "A fiduciary must exercise the highest good faith in the performance of his trust. A trustee must exercise such prudence and diligence, considering all the circumstances, in conducting the affairs of the trust, as men of average prudence and discretion would employ in their own affairs, or perhaps, would employ, not in their own affairs, but in the affairs of others. Hence no principle is more equitable or better settled in the law than that a trustee shall make no personal profit from the funds entrusted to his care beyond a reasonable compensation for his services." And it can be added that, not only should he make no personal profit, but he should not use his position to divert funds from the principal of the estate for his own satisfaction, although personally he may make no profit from the transaction.

The rule was clearly stated by CHIEF JUSTICE ANDREWS in *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 131, 137, 23 Atl. 708: "It is a thoroughly well-settled equitable rule that any one acting in a fiduciary relation shall not be permitted to make use of that relation to benefit his own personal interest. This rule is

strict in its requirements and in its operation. It extends to all transactions where the individual's personal interests may be brought into conflict with his acts in the fiduciary capacity, and it works independently of the question whether there was fraud or whether there was good intention. Where the possibility of such a conflict exists there is the danger intended to be guarded against by the absoluteness of the rule. The underlying thought is that the agent or other fiduciary should not unite his personal and representative characters in the same transaction; and equity will not permit him to be exposed to the temptation, or be brought into a situation where his own personal interests conflict with the interests of his principal and with the duties he owes to his principal. The rule applies alike to agents, partners, guardians, executors and administrators, and directors and managing officers of corporations, as well as to technical trustees." In 2 Perry on Trusts (6th Ed.) § 770, the duties of trustees for sale are set out in considerable detail. Among them we quote as particularly applicable to this case the following: "Mere inadequacy of price, unless it is so gross as to be evidence of fraud, is not sufficient to invalidate a sale, if the transaction is in good faith, and due diligence was used in getting the best possible price for the property. . . . The trustee should inform himself of the value of the property, if necessary, by the estimate of some experienced person; and if he sells at a grossly inadequate price, it is a breach of trust which affects the title in the hands of the purchaser."

The appellant urges the inventory valuation in support of the propriety and good faith of this sale. Where a valuation cannot accurately be determined by market reports, an inventory valuation is ordinarily assumed to be a fairly conservative estimate as of the time the inventory is made. This valuation is not,

however, an absolute defense when it comes to the disposition of the property inventoried. The trustee is not responsible for depreciation unless he has been negligent in handling the property, and, on the other hand, he is accountable in case of appreciation in value which is or should be known to him as an ordinarily prudent, diligent manager of the property.

Tested by the standard above mentioned, the record shows that Mr. Dickerman is chargeable with serious breach of duty in the sale in question. In 1905 this real estate was inventoried at $9,100, and we assume this to have been a fair valuation at that date. At the time of the sale in 1915 the market value of the same real estate was in excess of $24,990. Mr. Dickerman was about eighty years of age, but no question was raised as to his mental capacity and ability to manage property. It appears that he had managed his wife's property, of which the real estate in question was a part, since she received it in 1863. There is no finding that he did not know of the appreciation in value, and we must assume that if he only moderately well discharged the duties of his trust and was moderately well informed of property values, where an increase to more than double the inventory value has taken place in a period of ten years, he must be taken as chargeable with knowledge that in selling for $9,100 he was selling for a grossly inadequate price. It is rather absurd to suppose that he had managed this real estate for fifty-two years, and in his wife's opinion, as the record shows, managed it well, and was quite innocent of the fact of a very substantial increase in value between 1905 and 1915. The circumstances of the sale are strongly suggestive of an intent to make a valuable gift to his sister and her son out of this property, the whole of which was, by his wife, left ultimately to others. The final residue of the trust fund

after Mr. Dickerman's death was left by Mrs. Dicker-man to cousins of her own blood. The effect of the finding is that he proposed a sale at the inventory figure to one of his sisters and her son, for which, as trustee, he received nothing, but individually received a receipt for a personal debt he owed his sister of $500, and nothing more has ever been paid either to him or to his administrator on account of the trust fund; and that all that now exists in the trust fund is a charge to his account of $9,100 from the sale, and that charge itself appears to be a matter of bookkeeping. In short, he transferred the title, to his sister and her son, of property worth $24,990, for which he received $500 on his personal account only. Further, those transfers were not recorded until his death, and he remained in the use of the property for his life, though the deeds do not so provide. Whether he meant the transfer to be a gift from him to his sister and her son, we do not know, but we do know that the final result was that $15,890 of property which should have been in his hands at his death to meet the legacies given by his wife out of the fund of which he had the life use only, is, by his conduct in the sale, now vested in his sister and her son, and the trust fund is that much short, and this shortage ultimately falls on Mrs. Dickerman's cousins by blood.

The appellant further says that in any view that may be taken of the transaction, this action and appeal from the refusal to accept the trustee's account is not the correct remedy, and that action should be brought against his sister and her son, his grantees, to have these deeds cancelled. It is not necessary to decide whether such an action could be maintained or should have been brought, and we make no suggestion on that point; for it is quite clear that whatever other remedy there may be, if any, the present procedure is entirely

proper for the protection of the trust fund. The account of the trustee is short of what it should be by more than $15,000. Upon finding this fact it was the duty of the Court of Probate to refuse to accept the account until corrected. As appellees suggest, Mr. Dickerman could have been held had he personally presented his account the year following his sale, and it follows that his estate is clearly liable when Mr. Dickerman's administrator files the final trustee account. The appellant also suggests the hardship to the sister and heir of Mr. Dickerman, other than Dency, who received nothing out of the trust estate, if the deficiency is made up out of his present estate, while Dency and her son are left in possession of what they did not pay for. Should that be the ultimate result, we can only say that it is due to Mr. Dickerman's conduct alone and not to the legatees of the remainder interest.

The appellant opens his argument by treating the power given in the 15th clause as a technical power of appointment, as that term is used in chancery practice. We cannot so construe it. So far as can be gathered from the will, Mrs. Dickerman had no idea of making her husband the distributee of the principal of this trust fund. Any such idea, if it exists, must be gathered in some way from the will; Mrs. Dickerman not only provided that any and all proceeds of the sale should be held for the same uses and purposes as the property sold, but in nine subsequent clauses of her will took very particular pains to make such distribution of the whole fund herself, and from the final residue, to her own kin. She did not by the remotest implication give him the power to determine who should take the final beneficial interest in the trust fund. The power given her husband was a power of sale merely, and not the power to designate the person

or persons who should take the principal of the fund of which she makes her husband trustee.

Upon the foregoing construction of the will the court committed no error in admitting testimony of the value of the land in question at the time Mr. Dickerman conveyed it to his sister and her son. There was also no error in the refusal of the court to incorporate in the finding the paragraph of the draft-finding showing the relations of Mr. Dickerman and his wife to his sister Dency H. Peters and her son. This was quite immaterial to the interpretation of the will, and while it might furnish an explanation of the diversion of more than $15,000 of the estate to them, it in no way justifies or excuses such action.

There is no error.

In this opinion the other judges concurred.