HENRY RUSSELL *et al.*, *Appellants*, v. FIRST NATIONAL BANK OF EVERETT, *Respondent*.

FIRST NATIONAL BANK OF EVERETT, *Respondent*, v. ELLA M. RUSSELL, *as Executrix and Trustee*, *et al.*, *Appellants.*[1]

*R. J. Faussett, William H. Pemberton,* and *Roy D. Robinson,* for appellants.

*Mulvihill & Anderson,* for respondent.

MITCHELL, J.—Charles E. Russell and Ella M. Russell were husband and wife, and acquired considerable property, including that involved in these actions. All of it was community property at the time of his death,

[1]Reported in 14 P. (2d) 14.

except certain real property in Clallam county to which he had given her a deed. He died in March, 1925. During his lifetime, he engaged in the shingle mill business, first at Everett and then at Tenino, Mrs. Russell devoting a part of her time assisting him in that business. During his lifetime, he did his banking business with the First National Bank of Everett, to which he was indebted in the sum of $13,500 at the time of his death and for which the bank held his promissory notes. He left surviving him, his widow and their five children, viz: Henry Russell; Claire E. Curran, formerly Russell; Florence Stout, formerly Russell; Avonelle McManus, formerly Russell; and Nigel Vanrooy, formerly Russell.

He left a nonintervention will which, among other things, provided as follows:

"I give my wife, Ella M. Russell, the following interest in all the property I may die possessed of. She is to have the use and management of all of same during her life time unless she shall re-marry, but in case she shall re-marry, same shall immediately vest in my children as hereinafter stated, it being my intention that she shall have the entire use and management of said property so long as she shall remain single, and she shall have the full right to sell or otherwise dispose of any said property at any time while she shall remain single.

"And all the rest and remainder of my property, and the remainder and all remaining interest in same, I give in equal parts to my children, Florence Stout, Claire Curran, Nigel Vanrooy, and Avanelle Russell and William Henry Russell, except that each of the first four mentioned children shall give from their part of the property the sum of one thousand dollars to the last named William Henry Russell, so he shall receive four thousand dollars more than any of the others.

"And I hereby nominate and appoint my wife, Ella M. Russell, administratrix of this my last will

and testament, hereby revoking all former wills by me made, and I ask that she serve without bonds, and without the intervention of any court except to the extent required in the non-intervention will laws of the state of Washington.''

The will was admitted to probate in March, 1925, and the nomination in the will of Mrs. Russell as executrix was approved. Thereupon, she filed her oath and proceeded with the estate as required in cases of non-intervention wills. On October 1, 1926, the superior court duly entered a decree that the estate was solvent.

Mrs. Russell continued to operate the shingle mill business after her husband's death, in her name individually and as executrix, and in her management of it, which it appears was done in the utmost good faith, she carried it on in about the same manner that she and her husband conducted it in his lifetime. She continued banking relations with the First National Bank of Everett. First, she reduced the outstanding indebtedness, represented by his promissory notes at the time of his death, by several payments down to about six thousand dollars on April 25, 1925, and thereafter, as business needs required, borrowed money in her own name as executrix and individually, and made payments on notes that were renewed from time to time, sometimes reducing and at other times increasing the amount outstanding, as usually occurs in such business enterprises, until finally the amount owing the bank on June 12, 1928, was $19,500, in which amount and at which time she gave the note and mortgage involved in these actions, signing them individually, as executrix and as trustee under the will of her deceased husband. The shingle mill was destroyed by fire, since which time it has not been rebuilt.

The mortgage covered certain real properties in Snohomish county and also the land in Clallam county,

all of which, prior to the date of the mortgage, had been conveyed by Mrs. Russell, or purported to have been conveyed by her to her son Henry Russell.

Mrs. Russell has not remarried. Nothing has been done in court in the Russell estate since the decree of solvency was entered.

The five children brought an action against the First National Bank of Everett to cancel the mortgage dated June 12, 1928, for the alleged reasons, (1) that the mortgage was without consideration; (2) failure of the bank to file a verified claim against the estate; (3) that it was obtained by duress; and (4) that Henry Russell was a minor at the time of signing the mortgage deed and disaffirmed his act upon reaching the age of majority. The bank answered by way of general denials, except it admitted that it had not filed a verified claim against the estate of Charles E. Russell, deceased, and affirmatively alleged that Henry Russell's appearance indicating that he was more than twenty-one years of age, and his many transactions with the bank and other circumstances estopped him from setting up his minority to avoid his signing the mortgage, thus invoking the benefit of Rem. Comp. Stat., § 5830, prohibiting the disaffirmance of certain contracts.

After the commencement of the action to cancel the mortgage, the First National Bank of Everett commenced an action on the note and to foreclose the mortgage of June 12, 1928, for $19,500 and interest against Ella M. Russell, individually and as executrix and trustee under the will of Charles E. Russell, deceased, and also against Henry Russell, a maker of the mortgage, and also against the other four children. The bank further alleged that the transfer to Henry Russell by Mrs. Russell of the property covered by the mortgage to the bank was in trust for her and made for the purpose of defrauding the bank. To this fore-

closure complaint, the defendants set up as affirmative defenses the matters alleged in their complaint for cancellation of the mortgage.

The two actions were consolidated for trial, wherein it was decided that the note and mortgage were executed by Mrs. Russell in her individual and representative capacities for a valuable consideration, that the conveyance to her son Henry was fraudulent, and that the property therein described was, in fact, merely held by him in trust for her. Accordingly, the court granted judgment in favor of the bank against Mrs. Russell, individually and in her representative capacities, for the amount of the note and accrued interest, and adjudged the mortgage to be a first lien on the property described and ordered foreclosure and sale of the lands. It was further adjudged that the plaintiffs in the action to cancel the mortgage were entitled to no relief. All of the parties, other than the bank, have appealed.

The allegations in the pleadings that the mortgage was obtained by duress was abandoned at the trial, at least there was no evidence to support it. As to the defense of Henry Russell's minority at the time he signed the mortgage, the bank's answer to that allegation, invoking the benefit of Rem. Comp. Stat., § 5830, was sustained by the proof; and, in addition thereto, it clearly appears that, notwithstanding the conveyance by Mrs. Russell to her son Henry of the naked legal title to the land, it was without consideration and did not, nor was it intended to, deprive her of any beneficial interest in the property.

Of the mortgage given to the bank on June 12, 1928, which was signed also by her son Henry, and of her purported conveyance to her son, the trial court said, upon a clear preponderance of the evidence as we view it, as follows:

"The mortgage of June 12th 1928 was signed by Mrs. Russell in person, as executrix of the estate of her deceased husband and as trustee of his estate, and it was also signed by her son, who was then about nineteen years of age, for the reason that sometime prior thereto Mrs. Russell had transferred substantially all of her property to her son, admittedly for the purpose of placing it beyond her creditors, and particularly the First National Bank. I say 'admittedly' because the testimony of Mrs. Russell and her son was to the effect that the son paid no consideration for the property. It was understood between himself and his mother that he was to hold it subject to her orders and that it was to place property so that it could not be taken for a debt or debts of the estate of his father."

And, also:

"Secondly, he held the property in trust for his mother; he had no interest therein; it was never intended by either himself or his mother that the conveyance from her to him above mentioned should pass the title to the boy, therefore it is my opinion and conclusion that the boy had no actual interest in the property other than the holder of the bare legal title for the use and benefit of his mother."

It is claimed that the court erred in holding that Mrs. Russell as executrix or individually was liable upon the note as at first reduced from the amount owing by Mr. Russell at the time of his death, or upon any renewal thereafter. Mrs. Russell did not sign the note outstanding at the time of Mr. Russell's death. He alone signed it. The contentions are that the bank never presented to the executrix a verified claim of the amount due on the note at the time of Mr. Russell's death, and that, therefore, the claim was barred as a claim against the estate; while as to the individual liability of Mrs. Russell, it is claimed there was no consideration for the original indebtedness or renewals.

The statute of non-claim does not apply. The bank does not sue on a claim it held when Mr. Russell died, but on a note subsequently given by Mrs. Russell that, in part, represents that original indebtedness of his that she, a beneficiary under his will, agreed to pay, his estate being solvent. Appellants cite and quote from *Sykes v. Moore,* 115 Miss. 508, 76 So. 538, L. R. A. 1918B, 491, but that case is against them. It says:

"The best authorities, in our judgment, hold that a debt of a deceased husband is not a sufficient consideration for a note executed by the widow, *unless she received assets from the estate.*" (Italics ours.)

The rule is well stated in 8 C. J. 222, § 358, as follows:

"The same rule applies to a note given by the widow or by a distributee of the estate for a debt of the deceased husband or ancestor; if no assets are received from the estate such note is without consideration, whether executed by the widow, by an heir, or by a volunteer, especially if the debt of the ancestor was barred by limitations at his death. *On the other hand, a valuable interest in the estate, or assets actually received from it, will support such a note by the heir; by the widow; by a devisee of land* which is liable by statute or by the terms of the will for the decedent's debts; . . ." (Italics ours.)

The circumstances in this case, including the bank's taking a new note, amounted to forbearance to sue on the old note, which, of itself, constituted a good and valuable present consideration for Mrs. Russell signing the new note. *Katz v. Judd,* 108 Wash. 557, 185 Pac. 613; *Knickerbocker Co. v. Hawkins,* 102 Wash. 582, 173 Pac. 628; *Pitt v. Little,* 58 Wash. 355, 108 Pac. 941.

Still further concerning the argument that the estate is not liable for money borrowed by the executrix for

carrying on the business and giving a mortgage to secure the payment of the same, it may be said that none of the money was used for any purpose other than meeting obligations of the business being managed by her. It may be conceded that, if this were the case of an ordinary will which made no attempt to confer powers on the executrix, then without an order of court the executrix could not have carried on the business or given the mortgage in question. But this is a nonintervention will, and prior to the giving of the note and mortgage in question a decree of solvency had been entered, taking the management of the estate out of the probate court and leaving it with the executrix or trustee to handle according to the desire and wish of the testator under powers mentioned in the will. There was the power "to have the use and management" of all the property during her widowhood, and again,

" . . . it being my intention that she shall have the entire use and management of said property so long as she shall remain single, and she shall have the full right to sell or otherwise dispose of any said property at any time while she remain single."

These are pretty broad powers. The note and mortgage were within those powers. She used and managed the business and, in doing so, followed a common rule of mortgaging a portion of the property to manage and carry on the business. The fire or general adverse conditions in no way affected the good faith obligations involved in this controversy. The power to "sell or *otherwise* dispose" of property under this will is given to one who takes a life estate in the testator's interest in the property, and who, by the same instrument, is given the power to use and manage all that property. She, as a surviving member of the com-

438

munity, owns in her own right the remaining interest in that property.

Under such circumstances, the power or right to sell or otherwise dispose of property gives the right to mortgage it in good faith. Some of the authorities supporting this view, even where the powers given did not specifically enumerate the power to use and manage the property, are *Hooker v. Goodwin,* 91 Conn. 463, 99 Atl. 1059, Ann. Cas. 1918D, 1159; *Larson v. Mardaus,* 172 Minn. 48, 215 N. W. 196, and cases found in the annotations in 2 A. L. R. 1273-4.

Other nominal assignments of error require no further or distinctive consideration.

Affirmed.

TOLMAN, C. J., PARKER, STEINERT, and HERMAN, JJ., concur.

[No. 23695. Department One. August 25, 1932.]