MAURICE E. VIELE, Appellant, *v.* WILLIAM H. KEELER, Respondent.

*A codicil will not operate as a revocation of previous testamentary provisions, beyond the clear import of its language, and it never so operates on the ground of repugnancy, save when necessary, and only so far as necessary, to give the codicil effect.*

*An expressed intention to make a change in a will in one particular negatives by implication an intention to alter it in any other respect.*

The will of T., executed in 1836, gave three-fourths of his residuary estate to his executors, in trust, to be held in three equal and separate parts, one for each of his three daughters until her arrival at the age of twenty-one, after that time the daughter to care for the realty and keep invested the personality set apart for her share and have the rents and income accruing therefrom, "independent of her husband, if married," during life, the same to pass upon her death to her surviving children. The will then provided that in case either of the daughters married " and her husband be found capable and prudent in the management of property,

and shall treat her and her family with kindness" and the executors shall first give to her "a written testimonial to that effect," she shall have in addition to the life estate an absolute property in and control over the share apportioned to her. By a codicil it was provided that each of the daughters, after her arrival of age, should have and hold the property apportioned to her "according to the several clauses and directions" of the will, during her life, if married, free from the control of her husband, and as if she "were *femme sole*," with remainder to her children. *Held*, that the codicil did not revoke the provisions of the will conferring upon the executors power, by giving the testimonial, to convert the life estate into an absolute title.

The words of the gift to the executors were "unto my said executor or executors who shall consent to act or may survive." *Held*, that upon the death of all of the executors but one, the survivor had power to execute the prescribed testimonial.

By the judgment in an action for a partition of the real estate of which the testator died seized, certain real estate was allotted and set off to each of the daughters to be vested, as the decree declared, in her during her life, with remainder in fee to her issue. Subsequently the sole surviving executor executed to each of the daughters a testimonial, as required by the will. M., one of said daughters, died in 1889, leaving a will by which she devised all of her property to plaintiff, her husband, who subsequently entered into a contract to sell and convey a portion of the real estate set apart to her by said decree, by full covenant warranty deed to K., who, upon being tendered such a deed, refused to complete the purchase, alleging that plaintiff did not own the fee. Upon a case submitted under the Code, *held*, that upon the execution and delivery of the certificate the absolute fee in the lands set apart for her was vested in M.; that this included the lands set apart for her in the partition suit; and so that by her will the fee of the lands in question became vested in plaintiff, and he was entitled to a specific performance of the contract.

Also *held*, that the rights of M. and her devisee were not affected by the provision of the decree in partition declaring that she had simply a life estate, as that estate was subsequently changed into a fee by the executor's certificate.

(Argued October 26, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, in favor of defendant, entered upon an order made February 4, 1891, upon a case submitted under section 1279 of the Code of Civil Procedure.

The nature of the action and the facts, so far as material, are stated in the opinion.

*S. O. Shepard* and *Tracey & Cooper* for appellant. An expressed intention to alter a will in one particular, negatives by implication an intention to alter it in any other respect. (9 Cush. 291, 295, 296.) The will and codicils are to be read together, and, so far as may reasonably be, as if they were one instrument. (*Nelson* v. *Public Admr.*, 2 Bradf. 210; *Langdon* v. *Astor*, 16 N. Y. 9; *Wetmore* v. *Parker*, 52 id. 451; *Smith* v. *Van Nostrand*, 64 id. 278; *Wager* v. *Wager*, 96 id. 174.) There is no express revocation of the will in either of the subsequent codicils, or of the special provision in question. There is no implied revocation from clauses which are irreconcilable and which cannot possibly stand together. (*Van Nostrand* v. *Moore*, 52 N. Y. 20; *Van Vechten* v. *Keater*, 63 id. 55; *Wager* v. *Wager*, 96 id. 174; *Smith* v. *Van Nostrand*, 64 id. 278.) There is no irreconcilable conflict, and really no inconsistency, between the provisions in item 3 of the codicil and the provision of the original will. They can stand together with perfect harmony. (*Roe* v. *Vingut*, 117 N. Y. 212; *Crozier* v. *Bray*, 120 id. 367, 375; *Wetmore* v. *Parker*, 52 id. 450; *Redfield* v. *Redfield*, 126 id. 466; *Pierrepont* v. *Pierrepont*, 53 id. 595; *Taggart* v. *Murray*, Id. 233; *Austin* v. *Oakes*, 117 id. 577, 598.)

*Isaac Lawson* for respondent. A will and codicil are to be taken together as parts of one and the same instrument. (*Westcott* v. *Cady*, 5 Johns. Ch. 334; *Bradstreet* v. *Clark*, 12 Wend. 602; *Covenhoven* v. *Shuler*, 2 Paige, 122; *Norris* v. *Beyea*, 13 N. Y. 284; *Trustees, etc.*, v. *Kellogg*, 16 id. 88; *Van Nostrand* v. *Moore*, 52 id. 12; *Van Vechten* v. *Keator*, 63 id. 52; *In re Manice*, 31 Hun, 119; *Wetmore* v. *Parker*, 52 N. Y. 462; *Newcomb* v. *Webster*, 113 id. 191; *Nelson* v. *McGiffert*, 3 Barb. Ch. 158.) A purchaser will not be compelled to accept a doubtful title. (*Vought* v. *Williams*, 120 N. Y. 253; *Fleming* v. *Burnham*, 100 id. 1; *Abbott* v. *James*, 111 id. 673; *Hayes* v. *Nourse*, 114 id. 605; *Jordan* v. *Poillon*, 77 id. 521.)

O'BRIEN, J.    On the 10th day of July, 1890, the plaintiff, by an instrument in writing, agreed to convey and the defendant to purchase for the sum of $15,000 the undivided half of certain real estate situated in the city of Albany and particularly described in the record.    The plaintiff stipulated on his part to execute and deliver to the defendant on or before the first day of September thereafter a warranty deed of the premises with the usual full covenants, which would be sufficient to vest in the defendant an estate in fee simple absolute, free and clear of all liens and encumbrances.    Within the time provided in the agreement the plaintiff duly executed, acknowledged and tendered to the defendant a warranty deed of the premises described in the agreement, which contained all the usual full covenants, but the defendant refused to accept it on the ground that the plaintiff was not the owner of the land described therein in fee simple absolute, and that the deed would not vest title in the defendant.    The plaintiff claimed that the defendant was bound to specifically perform his part of the contract and the controversy was submitted upon an agreed case to the General Term, where judgment was directed for the defendant.    The only title which the plaintiff had was derived from his wife, Maria Viele, who died in the month of December, 1889, having duly executed her will, which was admitted to probate in the Surrogate's Court of Albany county, in and by which she devised the lands in question to her husband, the plaintiff.    Mrs. Viele was the daughter of Charles D. Townsend, who, it is admitted, was, in his life-time, seized of an estate, in the lands in question in fee simple absolute.    The controversy is narrowed down to the question whether Mrs. Viele took, under her father's will, an estate for life or in fee.    Charles D. Townsend died in Albany in the month of January, 1848, the owner in fee simple of the lot of land described in the contract.    He left surviving one son and three daughters, his only children and heirs at law, of whom Mrs. Viele was one.    He left a will dated January 28, 1836, and two codicils, all of which were admitted to probate in Albany county.    The title of

Mrs. Viele depends upon the construction to be given to these instruments. The executors were directed to proceed immediately after taking an inventory to collect all outstanding debts, except such as they deemed properly secured and invested, and out of such debts and the rents and issues of the estate to pay all the debts of the deceased. After the payment of debts, the executors were directed to divide the estate into four equal parts. One of these parts the testator gave absolutely to his son John F. Townsend. The other three equal parts were disposed of in the following language: "I do give and bequeath the remaining three equal parts of the said division, being three-fourths of my estate, as above mentioned, unto my said executor or executors, who shall consent to act, or may survive, or in case of their refusal, incompetency or inability thus to act, then to such person or persons as they shall name, or in case of their refusal to make such choice, then to such person or persons as the chancellor shall appoint, to have and to hold the said three equal parts of the said division in trust, and for the use of my daughters Helena D. Townsend, Maria Townsend and Sarah Townsend, severally setting apart to them each, one of the said equal parts of the aforesaid division, and to their respective names, and thus continue to hold each of said several parts to her use to whom it shall have been assigned, until she shall arrive at the age of twenty-one years, and they shall insure and constantly keep insured the several house or houses in the name of such one of my said daughters to whom they may assign them, and pay all assessments or taxes or charges thereon, or such other of my real property as they shall assign them as above directed, and shall also reinvest in their several names in safe securities all moneys which may be paid in on the securities apportioned to them as aforesaid, and shall charge the expense thereof to the share of that one to whom they shall have been apportioned as above, and after deducting such, and all incidental expenses, shall apply (if required) all the income of said several portions to the respective use, maintenance and education of said daughter to whom the share,

whence it shall have been derived, belongs. And the surplus over such necessary expenditures they shall invest, as above directed, in the name and for the use of such one of my daughters to whom the share has been apportioned as above, producing said income, and this my said executors or executor are required to do for my said daughters respectively, until they shall severally arrive at the age of twenty-one years. But and in case the aforesaid rents and income of any one share, shall in the consideration of my aforesaid executors or executor be insufficient for the education and maintenance of my daughter to whom such share shall have been thus assigned, suitable to her condition, whether married or single, then they are authorized to make to her such advances, from time to time, out of the principal of her said share, as in their discretion they may deem prudent and needful, and each of my said daughters after they shall respectively have arrived at the age of twenty-one years, are severally required, as my executors are directed, constantly to insure and keep insured the house or houses, and to pay all assessments and taxes thereon, and on all other real property severally apportioned to them, and to invest and keep invested all moneys and securities belonging to her share as above mentioned, and to receive and appropriate to her own several use and enjoyment, independent of her husband, if married, during her natural life, the net income and rents accruing therefrom, and for the better management thereof to appoint an attorney, or agent, or trustee, and by her own act and deed separately to account and settle with him and them therefor, and at and after the event of her death, her aforesaid share, both of real or personal property, shall pass to her surviving children, but if she leaves no children surviving her, then such share shall pass to and be equally divided among my afore-mentioned children, and their descendants, according to the Statutes of Descent of this state. But, and in case any of my said daughters shall marry, and her husband be found capable and prudent in the management of property, and shall treat her and her family with kindness, then in addition to the life estate given her as above in the

share apportioned to her as hereinbefore directed, she shall have the fee therein, and the absolute property and control thereof in her own several right, exclusively to possess, or to dispose of by deed, will, or otherwise, and to appropriate and enjoy the avails thereof, provided always that my said executors or executor acting, as aforesaid, in the execution of this will, be fully satisfied of the existence of such traits of character in her said husband, and shall have first given to such, my daughter, a written testimonial to that effect, and this they shall have authority to do at any time as well after as before they have fully executed the *other* provisions of this will."

The second codicil, bearing date in the year 1843, is the only one which in any way affects the title to the premises in question, and so far as material is in the following words :

"After my said daughters, Helena, Maria and Sarah, shall severally have attained the age of twenty-one years, it is my will that each shall then have and hold all and singular (the real and personal property), severally apportioned to and belonging to her, according to the several clauses and directions of my aforesaid will, for and during her natural life, to her own separate use, and free from all control, etc., of any husband which she may have, with remainder in fee to her child or children and their descendants, and that she and they may have severally the free and uninterrupted enjoyment of their several portions without molestation.

"It is my will that each of them, if married, do possess and enjoy their respective portions aforesaid as if they were *femme sole* and unmarried."

The principal question in the case arises upon this codicil. The defendant claims that its effect was to revoke the last paragraph of the will above quoted, whereby power was given to the executors, upon being satisfied that the husbands of the daughters possessed the qualities specified, to convert the life estate into a fee.

In the year 1850, an action to partition the real property of which the testator died seized, including the lands in question, was commenced. The children and heirs at law of the deceased

and the husbands of such of the daughters as were married were made parties to this action. By the judgment in this action the premises embraced in the contract of sale between the plaintiff and defendant were allotted and set off to Mrs. Viele, and adjudged and decreed to be vested in her during her natural life, free from any control on the part of her husband, with remainder in fee to her issue, and if no such issue survived her, then to the heirs at law of the testator. This judgment was according to the terms of the original will, the power given to the executors to vest a fee in the daughters, in the event specified, not having yet been exercised. On the 31st day of October, 1872, the sole surviving executor executed under seal, acknowledged and procured to be recorded in the clerk's office of the county of Albany, an instrument in execution of the power conferred by the last paragraph of the will above referred to, and of which the following is a copy:

"I, John F. Townsend, formerly of Albany, now of New York, sole surviving executor of the last will and testament of Charles D. Townsend, late of the city of Albany, now deceased, and now acting in this behalf as executor of the said will, do hereby certify that I am fully satisfied that Maurice E. Viele, the husband of Maria Townsend, Solomon Townsend, the husband of Helena D. Townsend, and Edward S. Coles, the husband of Sarah Townsend (the three daughters of the said Charles D. Townsend, in his said last will and testament named), are, and that each of their said respective husbands is, capable and prudent in the management of property, and that each one of said husbands of the said respective daughters of said testator does treat his said wife and her family with kindness, and being so fully satisfied of the existence of such traits of character in each of the husbands of the daughters of said testator respectively above named,

"I do, therefore, as such executor as aforesaid, make, sign and deliver to said daughters this written testimonial to that effect, in pursuance of the provisions in said will contained, and intend the same to become operative as is provided in and

by said will, in case of the execution and delivery of this instrument."

If the power conferred upon the executors in the original will was not revoked by the codicil, this instrument vested an absolute fee in the daughters as it had for that purpose all the effect of a conveyance. (4 R. S. [8th ed.] 2475, § 38.)

It is certain that the codicil contains no express words of revocation. If the testator intended to revoke such an important provision of the will as that which vested the fee of the real estate in the daughters, upon the existence of certain conditions to be certified by his executors, it is reasonable to conclude that he would have used appropriate words to accomplish such a result, and not leave it to construction or implication. We have had occasion recently to pass upon the effect of a codicil upon the original will. In that case, as in this, it was claimed that the codicil revoked an important provision of the will. The language of the codicil in that case was much more favorable to revocation than in this, but we held that it had no such effect. (*Redfield* v. *Redfield*, 126 N. Y. 466.)

There is no irreconcilable conflict and no inconsistency between the language of the codicil and the provision of the will which it is claimed is thereby revoked. Both can stand without doing violence to the language used by the testator. If it is asked what the testator intended to accomplish by the codicil if not a revocation of the provision of the original will referred to, it may be answered that he intended to effect two changes, which were, no doubt, deemed to be important. It will be seen by the terms of the original will that the legal life estate of the daughters' shares was in the executors. The codicil provided that upon the daughters attaining the age of twenty-one years they should be vested, with the legal title to each share, " according to the several clauses and directions of my aforesaid will " for and during her natural life to her own separate use free from the control of her husband. The will and codicil were both executed prior to the legislation in this state in regard to the rights of married women to take and

hold property, and the husband's interest and control of the property devised by the testator to his daughters would be, in the absence of restrictions in the will, such as the common law conferred.

Anticipating the marriage of the daughters, the testator in the codicil repeated some provisions of the will and added some new ones, all calculated to secure the daughters, if married, in the enjoyment and control of the property to the same extent as if they were unmarried. But neither by words or by implication did the testator manifest any intention to change or modify that provision of his will by which an absolute fee, in a certain event, was to vest in his daughters. He left that important provision untouched, as is manifest from the language used in the codicil. It is a familiar rule that a codicil will not operate as a revocation of previous testamentary provisions beyond the clear import of its language, and that an expressed intention to make a change in a will in one particular negatives, by implication, an intention to alter it in any other respect. (*Redfield* v. *Redfield, supra.*) So also it is said that a revocation of an earlier disposition of a will by a later one, or by a codicil, on the ground of repugnancy, is never anything but a rule of necessity, and operates only so far as is requisite to give the later provision effect. (*Austin* v. *Oakes,* 117 N. Y. 577, 598; *Crozier* v. *Bray,* 120 id. 375; *Taggert* v. *Murray,* 53 id. 233; *Pierpont* v. *Patrick,* 53 id. 596.) We have seen that all the language of the the codicil can have full effect without disturbing the special provision of the will under which Mrs. Viele became vested with an estate in fee simple absolute to the premises in question.

The written testimonial, which was necessary in order to vest the absolute fee in Mrs. Viele, was executed by the surviving executor, the others having died. We do not think that the exercise of this power was confined to all the executors named in the will as suggested by the defendants. It is apparent from the nature of the act as well as the express language of the will that the testator intended that the survivor should per-

form this duty in case of the death of his associates.   The existence in the husbands of the qualities specified in the will was a matter to be determined by the executors alone, acting in the performance of the duty imposed upon them by the will and without fraud, and upon this question the testimonial is conclusive and applies to the lands in question though allotted to Mrs. Viele many years before its execution, by a judgment in partition.   Nor does the judgment in partition, declaring that . Mrs. Viele was vested with a life estate in the premises, in any way affect the question.   That judgment was in accordance with the situation existing in 1850 when it was rendered and before the executor exercised the power to convert the life estate into a fee.   It is not in any respect inconsistent with the existence of a fee simple absolute in Mrs. Viele at the time of her death.   We think that the conveyance tendered to the defendant by the plaintiff, was a good performance of the contract and was sufficient to vest a perfect title in the defendant.

The judgment of the General Term should be reversed and judgment ordered for the plaintiff that the defendant specifically perform the contract.

All concur.

Judgment reversed and ordered accordingly.