THE GREENWICH TRUST COMPANY, TRUSTEE, *vs.* EDMUND C. CONVERSE ET ALS.

Third Judicial District, New Haven, June Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

The question whether discretionary powers conferred upon an original testamentary trustee survive to his successor, is fundamentally one of intention, involving in each case the proper construction of the will.

In the present case the testatrix, who died in 1912, created a trust fund for the support and maintenance during his life of her son and his family, naming her husband as its trustee and authorizing him to pay over to the son the net income in such proportion and in such manner as the trustee might deem for his best interest, with full power to the trustee "in his absolute discretion" to pay over any part or all of the principal of the fund to or for the benefit of the son or his family. The husband acted as trustee until his death in April, 1921, when the plaintiff was appointed as his successor. At his mother's death, Edmund C. Converse, the son, was married and had two children. Since then Edmund and his wife have been

divorced, and each has remarried. In a suit to determine whether the discretion to advance any part of the principal of the trust fund survived to the successor trustee, it was *held:*—

1. That the tendency of recent judicial authority was to give effect, when possible, to discretionary powers plainly intended by the testator for the benefit and protection of the beneficiaries of the trust; and especially so when a different construction would cause a serious impairment of the full design of the donor and leave it imperfectly executed.

2. That inasmuch as all the discretionary powers conferred on the original trustee were to remain potentially operative throughout the lifetime of the son, who, in the ordinary course of nature, would outlive his father, it was wholly improbable that the testatrix should have intentionally defeated that purpose by a repugnant provision.

3. That the "absolute discretion" vested in the trustee was not to be treated as importing an irresponsible discretion to pay or withhold at the will or caprice of the trustee, but that the power to disburse the principal of the fund was to be exercised only when, in the judgment of the trustee, it was for the benefit of the son and his family that such payment should be made; that a court of equity might, in a proper case, compel the trustee to inquire in good faith whether a desired payment of principal would be for the benefit of the son and his family or not, and to decide accordingly; and that when such a situation developed an enforcible trust existed.

4. That the discretionary powers conferred on the original trustee were annexed to the office and passed to the successor trustee, the plaintiff. (*One judge dissenting.*)

5. That the divorced wife of the son was no longer one of his "family" and therefore took no interest in the trust fund, and that his present wife took in the former's place.

Argued June 6th—decided November 17th, 1923.

Suit to determine the construction of a clause of the will of Jessie M. Converse, of Greenwich, deceased, and the discretionary powers, if any, of the plaintiff, a successor trustee, brought to and reserved by the Superior Court in Fairfield County, *Maltbie, J.*, upon the allegations of the complaint, admitted to be true, for the advice of this court.

On September 3d, 1912, Jessie M. Converse of Greenwich died leaving a will, of which the fifth paragraph provided in part as follows: "I give and bequeath

unto my executor hereinafter named whom I constitute as trustee for the purpose, the sum of One Hundred Thousand Dollars ($100,000) in trust to hold during the lifetime of my son Edmund C. Converse, Jr., and to manage, invest and reinvest the same in such manner as my said executor shall deem best, with full power to my executor to continue any investments that I may leave in the form in which I may leave the same, and to change or vary the same from time to time, and to make any investments that he may deem proper, whether the same be authorized by law or not, and to receive the income and revenue thereof, and to pay over the net income thereof during the lifetime of my said son to and for the support and maintenance of himself and of his wife and child or children, in such proportion and in such manner as my said executor may deem for the best interest of my son and his said family, with full power to my executor in his absolute discretion, to pay over and advance from time to time any part, or to pay over at any time all, of the principal of said trust fund to or for the benefit of my said son or his wife and children, and upon the death of my said son, if he leave a wife him surviving, to continue to hold such part of the principal of said trust fund as may be then in his hands, and to invest and reinvest the same and to receive the income and revenue thereof, and to pay over the said income unto the wife of my said son during her lifetime or until she remarry; and upon her death, or upon her remarriage or if she do not survive my son then upon his death, to distribute such part of the principal of said trust fund as may be then in his hands to and among the issue of my said son in equal shares per stirpes and not per capita."

The executor thereafter named in the will was Edmund C. Converse, the husband of the testatrix. He acted as executor and trustee until his death April 4th,

1921, when the plaintiff was appointed as successor trustee. During his lifetime Mr. Converse expended the entire income from the trust fund for the support of Edmund and his family, and at the request of Edmund he advanced $10,000 of the principal in connection with a cattle ranch conducted by Edmund in California.

The plaintiff since its appointment and qualification as successor trustee has continued to pay the entire net income of the trust fund to or for the support of Edmund and his family, but has made no advances out of the principal. Edmund has requested the plaintiff to make further advances out of the principal in connection with the same cattle ranch, and the trustee has investigated the facts and is satisfied to make advances for that purpose, but has been advised by counsel that a question may exist as to whether the discretion to make such advances survives to a successor trustee appointed by a Court of Probate.

All parties interested have appeared and answered, and the questions reserved for the advice of this court are as follows:—

"I. Whether the discretion vested in the original trustee relative to the payment of principal and/or income from said trust survived his death and can now be exercised by the plaintiff as substituted trustee.

"II. Can the plaintiff make payments of principal and/or income to the defendants, Judith A. Salisbury and Estelle Converse, and if so, under what circumstances?

"III. What rights, privileges, powers and duties with reference to the payment of the principal and income of said trust has the plaintiff as substituted trustee?"

At the time of Mrs. Converse's death, her son's family comprised himself, his wife, Judith A. Converse, and two children, Edmund C. Converse III and Roger

Converse. Since then Judith A. Converse has been divorced from Edmund and has remarried, her present name being Judith A. Salisbury. Edmund has also remarried, his present wife being Estelle Converse.

*Walter N. Maguire,* for the plaintiff.

*Walter M. Anderson,* for defendants Edmund C. Converse III and Roger Converse.

*Ralph Royall,* for defendants Edmund C. Converse and Estelle Converse.

*Walter M. Anderson,* for defendant Judith A. Salisbury.

BEACH, J. The answers to be given to all of the questions reserved, depend upon whether, and to what extent, the discretionary powers conferred on the executor and original trustee survive to the successor trustee appointed by the Court of Probate.

It is not to be expected that the authorities on the subject of the survival of discretionary powers conferred on testamentary trustees should furnish an inflexible rule as to what powers will or will not survive to a successor trustee in the absence of an express grant of the original power to the successors in trust; even though a uniform rule of interpretation had been applied in all cases. This has not been done. While it has been generally agreed that when the power is a matter of personal confidence in the trustee, it will not survive unless the testator so direct, no single test for determining whether or not the power is a matter of personal confidence has been universally accepted and adhered to. The older and more rigid test apparently followed the distinction between the general and special powers of trustees, and assumed that every grant of

discretionary power was a matter of personal confidence.   See 2 Perry on Trusts & Trustees (6th Ed.) § 496 *et seq.*

But most of the later cases, cited by Perry in the note to § 503, are inclined to give effect, when possible, to discretionary powers plainly intended by the testator for the benefit and protection of the beneficiaries of the trust.

Thus in *Sells* v. *Delgado,* 186 Mass. 25, 70 N. E. 1036, the trust was to pay income to children, and further that as each child attained the age of twenty-five years the two trustees named or the survivor of them "may, if in their or his discretion they or he deem it prudent and advantageous, pay over and convey to the one reaching that age his or her respective share, to vest in him or her absolutely and forever, and my said trustees or the survivor of them shall be the sole judges, and I leave it entirely to their or his discretion to decide whether or not it will be prudent and advantageous for any of my children on his or her reaching that age to receive the principal of his or her share." Neither of the two trustees named qualified, and the question was whether the power to decide whether or not any child reaching the age of twenty-five years should receive the principal of his or her share, could be exercised by a substitute trustee appointed by a court. Although the words conferring the discretion would apparently, if taken alone, import that the original appointees or the survivor of them were the sole judges authorized to decide the question, the court, looking at the general intent of the testatrix, construed the entire trust provision as warranting the inference that she did not intend to restrict the exercise of the power to the named trustees; observing that a different construction would cause a serious impairment of the full design of the testatrix and leave it imperfectly executed.

As applied to a discretionary power to make payments out of principal, the doctrine now in force in this State and the course of its development may best be understood by a short review of the cases. In *Security Co.* v. *Snow,* 70 Conn. 288, 39 Atl. 153, the testator left the fund to his wife *"in trust,* however, to be invested and managed by my said wife, and to be paid and delivered and conveyed by my said wife to my said daughter from time to time during her natural life as my said wife may deem for the interest and welfare of my said daughter," and any part "thereof which shall not be paid, delivered and conveyed as aforesaid to my said daughter during her natural life shall at her decease be paid, delivered and conveyed to her lawful heirs."

The appointee died before turning over any considerable portion of the trust fund to the *cestui que trust,* and the plaintiff, having been appointed trustee in her stead by the Court of Probate, asked the Superior Court whether it could exercise the discretionary power conferred on the original trustee. Upon a reservation for the advice of this court, we held that the discretionary powers accorded to the wife were purely personal and terminated at her death; also that the gift over to the daughter's heirs was void under the statute in force at the testator's death. The result was that the entire trust provision became incapable of execution. It happened, however, that the trust thus defeated was established by a codicil revoking an absolute gift of the same estate to the same beneficiary, and so it was held that the revocation fell with the trust.

In *Whitaker* v. *McDowell,* 82 Conn. 195, 72 Atl. 938, the trustee was directed to pay the income to the *cestui que trust* for life, and further authorized and directed "if in his judgment any portion of the principal of said trust fund may be needed for the proper and necessary

support of my said sister, to use so much of the principal of said trust fund, as may be needed for her suitable care and maintenance and it is my will that said trustee have an absolute discretion in the manner of the disposition of said trust fund, both principal and income, during the lifetime of my said sister, and his decision in said matter is to be final and conclusive." Notwithstanding the positive direction to the trustee to use so much of the principal as in his judgment might be needed for the proper and necessary support of the *cestui que trust*, we held that a successor trustee had no power to sit in judgment and make such payments, holding, as matter of construction, that the last four lines above quoted "make it clear that it was not the testator's intention to require the trustee as one of his duties to pay to the life beneficiary, at any time, any part of the principal of the trust fund, but that he intended to leave it to the judgment and discretion of the original trustee as to whether or not any part of the principal should be paid to the beneficiary. Such discretionary power as to the use of the principal was a matter of personal confidence in the original trustee, which cannot be exercised by the plaintiff." It will be noted that the discretionary power reposed in the original trustee extended to both principal and income, but as nobody questioned the power of the successor trustee to pay income, that part of the trust was not endangered.

In *Russell* v. *Hartley*, 83 Conn. 654, 78 Atl. 320, the trustee was directed to pay over the income to the *cestui que trust* for life, and further authorized "to pay over to her from time to time such portion of the principal of said trust as he may deem necessary for her comfortable support." In that case, also, the power of a successor trustee appointed by the Court of Probate was questioned, and we held that the power to

make payments out of principal survived. Admitting that a power of personal confidence ends with the death of the donee, we said: "The terms of the codicil construed with the will furnish the true guide in ascertaining whether the power is one of personal confidence, and this guide is the intention of the testatrix. The testatrix contemplates a trust which shall exist during the life of her niece and provide her with a comfortable support, from the income if this be sufficient, and, if not, from the principal in such proportion as the trustee may determine. In the event of a remainder after the termination of the trust the codicil attempts to dispose of this finally. It is wholly improbable the testatrix, knowing the uncertainty of life and solicitous and insistent as she exhibits herself in the care of her niece during her life, should intentionally have inserted in the codicil a clause repugnant to her own purpose, and taken from her niece the protection which was the object of the codicil, by limiting the powers of the trust to the trustee of her own naming. Repugnant provisions must be construed in such way as to preserve the intention of the testatrix. *Viele* v. *Keeler,* 129 N. Y. 190, 199, 29 N. E. 78. The language of the codicil does not either necessarily or impliedly lead to the conclusion that the powers conferred upon this trustee were because of special or peculiar confidence reposed in him. The duty of the trustee is to pay the income to the niece during her life; over that he has no discretion. His authority to pay over the principal is limited by the purpose named, viz: for her comfortable support. When the necessity arises the duty of the trustee is clear. The determination of the occasion for the exercise of this power, and the extent of its exercise, while ordinarily for the discretion and judgment of the trustee, is not an ultimate judgment. A court of equity in an appropriate case will review

and revise that judgment. *Peckham* v. *Lego*, 57 Conn. 553, 554, 19 Atl. 392."

It will be observed that there is not much difference between the discretionary powers conferred on the respective trustees in the *Snow* and *Russell* cases. In each case the power is to pay over so much of the principal as the trustee may deem necessary for the support of the beneficiary. The difference in result is brought about by applying in the *Russell* case a more comprehensive method of construction, which puts greater emphasis on the primary intent of the testator to provide for the support of the beneficiary out of principal in case the income proves insufficient for that purpose, and greater emphasis on the power of a court of equity to revise and review a discretionary power which is not intended to be exercised or not at the caprice of the appointee, but is intended to be exercised upon the happening of a contingency foreseen and provided for by the testator.

In *Williams* v. *Gardner*, 90 Conn. 461, 97 Atl. 854, the trustee was directed from time to time to make careful inquiry "into the social and business character and relations of my said son; and if after such careful inquiry said trustee be of opinion that my said son would prudently and economically manage the same," to pay over a fractional part of the principal of the trust fund; otherwise not. There again the question was whether a successor trustee appointed by the Court of Probate could exercise the discretionary power, and in holding that the power survived, we said: "Neither the statute nor the general law authorizes the successors so appointed, of testamentary trustees, to exercise special discretionary powers founded upon personal confidence conferred by a testator upon the latter. *Whitaker* v. *McDowell*, 82 Conn. 195, 199, 72 Atl. 938; *Pratt* v. *Stewart*, 49 Conn. 339, 341. But

powers conferred by the testator, which the testamentary trustee, if acting, would be required to execute, it is the duty of his successor so appointed to execute. In the former case the execution of the power depends upon the mere discretion and will of the donee of the power, and the court cannot control his discretion or exercise it in his stead, and at his death the power ends. *Security Co.* v. *Snow,* 70 Conn. 288, 292, 39 Atl. 153; 1 Perry on Trusts (6th Ed.) § 248. In the latter case the power is coupled with a trust which a court of equity will compel the donee to execute, or, in case of his death or refusal to act, will execute by itself or another trustee appointed by it." We also held that the trustee might be compelled to make inquiry and to form a judgment and find whether the son's social and business character fitted him to manage the property prudently and economically, saying: "The determination, by such an inquiry, whether the son is capable of prudently managing the property, can be done by the court or a succeeding trustee as well as by the person appointed by the will. The power to sit in judgment is not a naked power."

It appears from these cases that if the power is coupled with a testamentary disposition for the benefit of the *cestui que trust,* and is to be exercised or not if and when a stated condition of fact appears to exist, then the original trustee may be compelled to exercise the power; that is to say, he may be compelled to inquire into the existence of the condition and in good faith to determine whether in his judgment it does or does not exist. Within the limits of due inquiry and debatable decision the discretionary judgment of the trustee is final; otherwise it may be reviewed and revised by a court of equity. In such a case the power is said to be annexed to the trust and survives to a successor trustee.

This statement of the rule of law does not exhaust the

subject, for the question whether the power survives is fundamentally a question of testamentary intent, and hence a question in each case of the proper construction of the will.

Applying these considerations to the case at bar, it must in the first place be assumed that this testatrix contemplated the possibility that in the ordinary course of nature her son would outlive his father. *Russell* v. *Hartley, supra.* And since she has expressly provided that all the discretionary powers conferred on the original trustee are to remain potentially operative throughout the lifetime of her son, it is—as we pointed out in the *Russell* case—"wholly improbable" that she should have intentionally defeated that purpose by a repugnant provision. Full effect should be given, if possible, to the manifest intent of the testatrix that her son and his family should, throughout his lifetime, have such parts of the principal of this trust fund as the trustee might deem for his or their benefit. The doubt arises from the use of the words "absolute discretion" when understood as importing an irresponsible discretion to pay or withhold at will.

We think, however, that the whole clause is capable of a construction which will preserve and not defeat the intent of the testatrix; namely, that the power is to be exercised only when in the judgment of the trustee it is for the benefit of the son and his family that some part of the principal should be paid over. The intent being clear, the single word "absolute" could not be allowed to defeat or seriously to impair the execution of the full design of the testatrix. Even if apparently repugnant, we should apply the rule stated in *Russell* v. *Hartley*, that repugnant provisions must be construed in such a way as to preserve the intention of the testatrix. But there is no necessary apparent repugnancy, for a discretionary power which is to be exercised in

pursuance of an enforcible rule laid down by the testatrix is not "absolute" in any objectionable sense. In that context the word means no more than the corresponding words in *Sells* v. *Delgado*,—"my said trustees or the survivor of them shall be the sole judges, and I leave it entirely to their or his discretion to decide whether or not," etc. Though the trustee is to be the sole judge, a court of equity will, in a proper case, compel him to sit in judgment, and compel him to execute the power in good faith. When that is so, an enforcible trust exists, which will not thereafter be permitted to fail for want of a trustee. *Sells* v. *Delgado*, *Williams* v. *Gardner, supra.*

On the point of construction, *Eastlick* v. *Smith*, L. R. (1904) 1 Ch. Div. 139, is interesting. In that case a power given to three trustees "to sell the whole or any part of my said real and personal estate as they in their absolute discretion may think fit, and apply the proceeds arising therefrom for the sole and absolute use and benefit of my wife for and during her natural life," was held not personal to the trustees originally appointed, but annexed to the office and to be exercised by the trustees for the time being, two of whom were successor trustees.

For the reasons stated, we hold that the power is annexed to the office and survives to the successor trustee. This answers the first of the questions reserved. As to the second question we are of opinion that the provisions for the payment of income and principal to the wife (not named in the will) of the testatrix's son were for the benefit of the wife as one of her son's "family," and were not otherwise for the personal benefit of his then wife, who is now divorced and remarried; and further, that his present wife, Estelle Converse, takes in her place.

Answering the third question, the substituted trustee

has the same rights, privileges, powers and duties with reference to the payment of the principal and income of the trust as did the original trustee.

The Superior Court is advised to render judgment accordingly. No costs will be taxed in this court in favor of any party.

In this opinion CURTIS, BURPEE and KEELER, Js., concurred.

WHEELER, C. J. (dissenting). I should not dissent in this case were I not of the opinion that the majority opinion in effect overrules *Security Co.* v. *Snow*, 70 Conn. 288, 39 Atl. 153, and *Whitaker* v. *McDowell*, 82 Conn. 195, 72 Atl. 938, and misconceives the decision in *Russell* v. *Hartley*, 83 Conn. 654, 78 Atl. 320. An analysis of these cases will, I think, show that we have not varied either in the underlying principle of these decisions, nor in their application, and that *Security Co.* v. *Snow*, and *Whitaker* v. *McDowell*, *supra*, control the decision of the case at bar, as the counsel have practically conceded, provided the same application be made now as then. The answers to be given to all of the questions arising upon this reservation depend upon whether the trust created by Article Fifth of the will of Mrs. Converse, conferred upon her husband as trustee, survived to the successor trustee appointed by the Court of Probate. This question will be resolved by ascertaining the intention of the testatrix. Did she intend to create a trust of personal confidence or not? If she did, the power conferred upon the trustee ceased at his death, otherwise it survived.

In *Security Co.* v. *Snow*, 70 Conn. 289, 291, 39 Atl. 153, the codicil under construction gave to the testator's wife, Mrs. Snow, in trust, certain estate to be invested and managed by her and "paid and delivered and con-

veyed" by her to the testator's daughter "from time to time during her natural life as my said wife may deem for the interest and welfare of my said daughter" (now Mrs. Burrill), and any portion of the estate or the net income not so paid, delivered and conveyed at the decease of the daughter, "shall . . . be paid, delivered and conveyed to her lawful heirs." The wife died not having paid, delivered and conveyed any of the principal of the estate. The principal question for the advice of this court was whether the plaintiff as trustee under the will by succession, could exercise the discretionary power given by the codicil to the wife of the testator. The court, by BALDWIN, J., said: "The trust created was such that it might be terminated at any time during her life, at the discretion of the trustee. Whether it should endure for a few months or for many years was to be determined by Mrs. Snow, in view of what she might consider to be the true interest of Mrs. Burrill. . . . The person on whose judgment of her circumstances he depended for measuring out from time to time what on the whole would best promote her welfare, is no longer in existence. . . . The discretionary powers which he gave to his wife for that purpose were purely personal and ended with her life."

In the Converse will the testatrix gave to her "executor hereinafter named," viz, her husband, a fund "to manage and invest . . . in such manner as my said executor shall deem best . . . and to pay over the net income thereof during the lifetime of my said son to and for the support and maintenance of himself and of his wife and child or children, in such proportion and in such manner as my said executor may deem for the best interest of my son and his said family." No question is raised as to the disposition of the income during the life of the son by the above provision. Following it is this provision as to the principal: "with full power

to my executor in his absolute discretion, to pay over and advance from time to time any part, or to pay over at any time all, of the principal of said trust fund to or for the benefit of my said son or his wife and children." Upon the death of the son leaving a wife surviving him, the executor is to hold the trust fund remaining and pay over the income therefrom to the wife, and upon her death or remarriage, or, if she does not survive him, upon his death, to distribute the principal of the trust fund to the issue of the son *per stirpes*. There is provision in the Converse will for the payment of the income, which does not appear in the Snow will, but this does not affect the principal question before the court in the construction of each of these wills. The trustee in the Snow will is the wife and in the Converse the husband. In each will the trustee is given the widest discretion to determine the times of payment and their amount. In the Snow will the trustee at her discretion may turn over to the beneficiary, the daughter, during her life from time to time the trust fund in whole or in part as she may deem for "the interest and welfare" of the beneficiary, the daughter. In the Converse will the trustee at his "absolute discretion" may turn over to the son during his life the trust fund in whole or in parts "for the benefit of my said son."

In the Snow will the trustee in her discretion determines when she "may deem it for the interest and welfare" of the daughter to make payments to her of the principal, which in that case included the principal and its increment. In the Converse will the trustee in his absolute discretion determines when he may deem it "for the benefit of my said son" to make payments to him of the principal. The cases are literally on all fours. There is nothing in the Converse will read in the light of its context, from which an intention

contrary to the construction we placed on this language in the Snow will can be drawn. There was no duty imposed by either will upon the trustee to pay any portion of the principal to the beneficiary, under any circumstances. The payment of the principal in neither case was made contingent upon its need for the support and maintenance of the son, but in the Snow will "for the interest and welfare" of the daughter, and in the Converse will "for the benefit" of the son, which, in the payment proposed to be made, is to meet bills to provide for improvements to be made upon a cattle ranch upon which the son is living. We should look far to find a better illustration of "personal discretion" than that involved in the payments proposed to be made from this trust fund.

In *Whitaker* v. *McDowell*, 82 Conn. 195, 72 Atl. 938, a testator by his will gave a fund in trust to one, with provision for a successor in case he failed to qualify, to pay over the income to his sister during her life, and "if in his judgment any portion of the principal of said trust fund may be needed for the proper and necessary support of my said sister, to use so much of the principal of said trust fund, as may be needed for her suitable care and maintenance and it is my will that said trustee have an absolute discretion in the manner of the disposition of said trust fund, both principal and income, during the lifetime of my said sister, and his decision in said matter is to be final and conclusive." The use of the principal was limited to the specified purpose, "so much of the principal . . . as may be needed for the proper and necessary support of my sister."

We did not consider the purpose as controlling the question of the testator's intention as to whether a successor trustee could act in place of the original trustee. We held that the last four lines of the clause

quoted made clear the intention of the testator. We said concerning them: "The words [quoting] make it clear that it was not the testator's intention to require the trustee as one of his duties to pay to the life beneficiary, at any time, any part of the principal of the trust fund, but that he intended to leave it to the judgment and discretion of the original trustee as to whether or not any part of the principal should be paid to said life beneficiary. Such discretionary power as to the use of the principal was a matter of personal confidence in the original trustee, which cannot be exercised by the plaintiff." In these words we found the clear expression of the testator's intention to make a trust of personal confidence. Without this definite statement of intention we might have found the testator's intention in the limitation of the uses of the fund to the proper and necessary support of the sister.

The Converse will does not limit the use of the principal to the support of the beneficiary, but to his benefit. It, however, expressly commits the power of making payments from the principal to "the absolute discretion" of the named trustee. If we compare the language used in this particular in the Converse will with that used in the Billings will in *Whitaker* v. *McDowell*, we find them to be substantially alike except that the Billings will reiterates in differing form the idea of absolute discretion.

*Russell* v. *Hartley*, 83 Conn. 654, 78 Atl. 320, the appellant insists, in effect overrules *Security Co.* v. *Snow*, and *Whitaker* v. *McDowell*, and in effect the majority opinion supports this conclusion, and this, I believe, to be a mistaken view. The underlying principle upon which each case was decided was the ascertainment of the intention of the testator: Did the testator mean to confer upon the trustee a trust of personal confidence which under the law ceases with the

decease of the trustee, or a trust which descended to whomsoever should in succession administer the trust? In *Russell* v. *Hartley,* the testator gave to a named trustee in trust a fund and authorized him "to pay over the income of said trust fund to said Caroline E. Hartley during her life and if in the judgment of said trustee she shall need more than the income thereof, then I authorize my said trustee to pay over to her from time to time such portion of the principal of said trust as he may deem necessary for her comfortable support." The specifications of the use of the principal is the same as in *Whitaker* v. *McDowell.* The difference is that the authorization to the trustee is not committed to his absolute discretion in such form as to indicate, as that did, a personal trust. We held: "The testatrix contemplates a trust which shall exist during the life of her niece and provide her with a comfortable support, from the income if this be sufficient, and, if not, from the principal in such proportion as the trustee may determine. In the event of a remainder after the termination of the trust the codicil attempts to dispose of this finally. It is wholly improbable the testatrix, knowing the uncertainty of life and solicitous and insistent as she exhibits herself in the care of her niece during her life, should intentionally have inserted in the codicil a clause repugnant to her own purpose, and taken from her niece the protection which was the object of the codicil, by limiting the powers of the trust to the trustee of her own naming. Repugnant provisions must be construed in such way as to preserve the intention of the testatrix."

We then distinguished *Security Co.* v. *Snow* and *Whitaker* v. *McDowell,* and pointed out the reasons which led to our holding the trust one of personal confidence in these cases. We said: "The underlying and controlling purpose of the testatrix in executing this codicil

was to make certain that her niece Caroline should be provided with a comfortable support during her life." And this, we found, could not be accomplished unless her authority to use the principal for that purpose continued during her lifetime. In commenting upon *Russell* v. *Hartley*, in *Hooker* v. *Goodwin*, 91 Conn. 463, 99 Atl. 1059, we said: "We held that the trustee's 'authority to pay over the principal is limited by the purpose named, viz: for her comfortable support.'"

In *Williams* v. *Gardner*, 90 Conn. 461, 466, 97 Atl. 854, the trustee was authorized to "make careful inquiry into the social and business character and relations of my said son; and if after such careful inquiry said trustee be of opinion that my said son would prudently and economically manage the same," to transfer to him one third of the trust fund. The determination of this fact as to whether the son would prudently and economically manage the fund was left to the discretion of the trustee. His discretion was conditioned upon the existence of this fact as found by him. He had to determine this as the trustee had to determine in *Russell* v. *Hartley* and *Hooker* v. *Goodwin*, the existence of the need of payment for the comfortable support of the beneficiary. In *Williams* v. *Gardner, supra*, we held: "The determination, by such an inquiry, whether the son is capable of prudently managing the property, can be done by the court or a succeeding trustee as well as by the person appointed by the will. The power to sit in judgment is not a naked power." The true rule, as we have said, for determining whether a discretionary power is a matter of personal confidence in the trustee, or is annexed to the trust, is the ascertainment of the testator's intention. If the power is coupled with a testamentary disposition for the benefit of the *cestui que trust*, and is to be exercised or not if and when a stated condition of fact appears to exist, then the original

trustee may be compelled to exercise the power in good faith; and unless the will shows a different intention, the power is said to be annexed to the trust and the testator to intend that it shall survive to a successor trustee.

In the Converse will the trustee is authorized to pay over the net income for the support and maintenance of the *cestui que trust.* This is the specific definite purpose found in the *Whitaker* v. *McDowell, Hartley* v. *Russell, Williams* v. *Gardner* and *Hooker* v. *Goodwin* cases; but the payment of the principal of the trust fund is limited in its purpose "to or for the benefit of" the *cestui que trust.* Finding what is a benefit to one is quite different from finding what is a comfortable and proper support for one. The one is indefinite, and furnishes no standard of determination except the discretion of the trustee. The other is definite, and furnishes a standard by which a court may determine whether the trustee has exercised his discretion within the bounds set by the will. *Security Co.* v. *Snow, supra.* None of the Connecticut cases so far decided, uphold a principle which would justify us in regarding the ascertainment by a trustee under a will of a benefit as a basis for the payment of principal to a *cestui que trust,* as requiring a finding of a testator's intention to give such power to a successor trustee. If the ascertainment of this benefit were as definite in purpose as the finding of a proper and comfortable support, the testator's intention could not be found from this fact since the other terms of the will show a different intention. The testatrix gave to the trustee full power "in his absolute discretion" to make payment of the principal "to or for the benefit" of the *cestui que trust.*

This, as we have seen, is practically identical with the provision of the will in *Whitaker* v. *McDowell,* except that in addition there was added, "and his decision in

said matter is to be final and conclusive." We held in that case that these words made the trust one of personal confidence and hence it did not descend to a successor trustee.

In *Russell* v. *Hartley, supra,* we distinguished *Whitaker* v. *McDowell* by quoting the ground of JUDGE HALL's opinion, indicating by our treatment of that opinion our recognition of its essential soundness. And in *Williams* v. *Gardner, supra,* we cited *Whitaker* v. *McDowell* as authority for the statement that a trust of personal confidence will not descend to a successor trustee.

There are no facts indicating that this trust was not intended to be a personal one. The fact that the testatrix must have contemplated that in the ordinary course of nature her son would outlive the trustee, his father, does not of itself indicate that she intended a continuing trust. It was an evidential fact merely. Nor is the fact that the testatrix intended the trust to operate as to income during the lifetime of the beneficiary conclusive that it was improbable that she intended the principal to be otherwise disposed of. The reasoning of *Russell* v. *Hartley* is not applicable, since in that case the underlying and controlling intention of the testator was to provide support for the *cestui que trust* from the income, and, if needed, from the principal. That is not this case. The trust gave the income to the *cestui que trust* for his life; the principal might be paid over as a whole or in parts and at different times. It was the determination of this which she committed to the absolute discretion of the trustee, her husband. She might be willing to give this very wide discretion to her husband, but not to another. If the principal were exhausted by these payments, the income for life which she had provided would vanish. It is to be presumed that she could rely on her husband

to so carry out the trust that each of these purposes as to the income and principal might be subserved, and that he would not exercise the second in such a way as to destroy the first. There is no presumption that she intended his successor to have this power. The power which this successor trustee desires to exercise is not to provide for support or maintenance, but for bills to be contracted for improvements to be made on a ranch. If this is done the trust fund will be dissipated *pro tanto*. We held in *Whitaker* v. *McDowell* that an absolute discretion as to the disposition of the principal of a trust conferred by will upon a named trustee is purely personal, and will not devolve upon a successor trustee appointed by the court. The holding was based upon our finding that this construction carried out the intention of the testatrix, and should be decisive in the case at bar, which makes the intention of the testatrix even clearer in the fact that the named trustee is the husband and the discretion over the principal is much broader and may be exercised at one time and to the destruction of the purpose to continue the trust to provide income for the *cestui que trust*. This, we held in *Security Co.* v. *Snow,* determined the testator's intention to repose in the named trustee, his wife, the discretionary power for her life to decide as a personal trust what would best promote the welfare of the *cestui que trust*. The Converse will thus presents the same fact which was held decisive in *Whitaker* v. *McDowell, supra,* and that which was held decisive in *Security Co.* v. *Snow.* The grant of "absolute discretion" confers far broader power than that of mere discretion. Absolute discretion is uncontrolled discretion. Judge Chitty so holds in *Tempest* v. *Lord Camoys* (1882), L. R. 21 Ch. Div. 571, 574, following *Gisborne* v. *Gisborne,* L. R. 2 App. Cas. 300. But, said he: "Without the assistance of this judgment, I should have said that

'absolute' does mean without any conditions, without any check, and without any control." His construction and interpretation was affirmed by the Lord Justices on appeal.

Our own decisions are authoritative, and *Security Co.* v. *Snow, Whitaker* v. *McDowell,* and *Russell* v. *Hartley,* have been regarded by other courts and jurists as settling our law, so that there is no present occasion to consider the decisions in other jurisdictions. The note (a) to § 503, Vol. 2, Perry on Trusts & Trustees, 6th Edition, contains a fair resumé of the doctrine of the decisions elsewhere: "And when power has been given to terminate the trust by turning over the entire property to the beneficiary or to make payments of principal to him from time to time, the courts are still less inclined to hold that the power was intended to pass to a substituted trustee. *French* v. *Northern Trust Co.,* 197 Ill. 30, 39, 64 N. E. 105; *Dillingham* v. *Martin,* 61 N. J. Eq. 276, 49 Atl. 143; *Security Co.* v. *Snow,* 70 Conn. 288, 39 Atl. 153; *Whitaker* v. *McDowell,* 82 Conn. 195, 72 Atl. 938; *Benedict* v. *Dunning,* 110 N. Y. App. Div. 303, 97 N. Y. Supp. 259; *Smith* v. *Floyd,* 124 N. Y. App. Div. 277, 108 N. Y. Supp. 775; *Dillard* v. *Dillard,* 97 Va. 434, 440, 34 S. E. 60."