GEORGE C. CONWAY, ATTORNEY GENERAL OF THE STATE OF CONNECTICUT *v.* BROOKS EMENY ET AL., TRUSTEES OF THE HILL-STEAD MUSEUM TRUST, ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 90236

Memorandum filed March 28, 1952.

*Buck, McCook & Kenyon,* of Hartford, for the Plaintiff.

*Hirschberg, Pettengill, Strong & Deming,* of Greenwich, *Gross, Hyde & Williams, Robinson, Robinson & Cole* and *Reid & Riege,* all of Hartford, for the Defendants.

DALY, J.  The facts are very well stated in the complaint and as alleged are substantially the same as found and set forth herein.

The plaintiff brought this action as representing the public interest in the protection of gifts, legacies and devises intended for public or charitable purposes.  The eight individual defendants are, and were at the times herein set forth, trustees of the Hill-Stead Museum trust under the fifth clause of the will of Theodate Pope Riddle, late of Farmington, deceased.  All accepted the trust.  The defendant Central Hanover Bank and Trust Company (Hanover Bank) was named as the trustee of various trusts under the will, including that under clause eighth for the benefit of the Hill-Stead Museum trust, and further including the trust under clause tenth and clause eleventh of the will, and accepted the trusts; and at the times herein set forth it was acting as trustee under the clauses.

The will was duly admitted to probate by the Probate Court for the district of Farmington on September 18, 1946.  The pertinent portions of the will are contained in clause fifth and clause eighth and read as follows:

"FIFTH:  All the real property now owned by me and known as 'Hill-Stead', situated at Farmington, in the State of Connecticut, together with all the buildings and other structures thereon and all the appurtenances thereto, and all household furniture, paintings, engravings, art objects and other articles of household use or ornament, tools, equipment and other articles of tangible personal property contained in said buildings or situated on or about said real property at the time of my death * * * I give, devise and bequeath to the Trustees hereafter appointed in this Clause Fifth of my Will and their successors, as Trustees, IN TRUST, to maintain the same forever as a Museum for the exhibition of the articles of

artistic interest contained in the main house, and for the education and benefit of the citizens of the Villages of Farmington and Avon and the general public. Said Museum shall be known as the 'Hill-Stead Museum'.\* \* \*

"The entire public shall have access to Hill-Stead Museum, subject to reasonable regulations which may be established by the Trustees from time to time, but the Trustees shall charge an admission fee for entrance to the Museum, the proceeds thereof to be used to assist in the upkeep of the Museum. \* \* \*

"If at any time after three years from the date of the probate of this Will, the Board of Trustees of the Hill-Stead Museum, by the affirmative vote of at least two-thirds of the members thereof, shall in their absolute discretion determine that there is not sufficient public interest in the Museum to warrant continuing to maintain the Hill-Stead Museum as such, the trust created by this Clause Fifth of my Will shall terminate and the Trustees under this Clause Fifth shall convey, transfer, pay over and deliver all the real and personal property then remaining in their hands to said CENTRAL HANOVER BANK AND TRUST COMPANY, as Trustee of the trust for public, educational and charitable purposes which is created by Clause Tenth of this Will, to be held and disposed of by it upon the trusts, terms and conditions set forth in said Clause Tenth. \* \* \*

"EIGHTH: I give, devise and bequeath the sum of Four hundred thousand Dollars ($400,000) to the Trustee named in Clause Eleventh of this Will, to hold the same IN TRUST, in perpetuity (except as otherwise provided in the next paragraph of this Clause Eighth), and to invest and reinvest the same, and to collect and receive the income therefrom, and to pay out of the net income from said trust fund

the taxes (if any), assessments, water rates, insurance premiums, cost of repairs, and all other expenses of the maintenance and upkeep of the real and personal property disposed of by Clause Fifth of this Will, and of the Hill-Stead Museum directed to be established in Clause Fifth of this Will, and any balance of the net income of said trust fund shall be disposed of as if it were income from my residuary estate.

"If at any time the trust created by Clause Fifth of this Will shall terminate in any of the ways which are provided in said Clause Fifth, then and upon the happening of such event the trust created by this Clause Eighth of my Will shall likewise terminate, and thereupon the principal and income of this trust then in the hands of the Trustee under this Clause Eighth, shall be transferred, paid over and delivered to said Central Hanover Bank and Trust Company, as Trustee of the trust for public, educational and charitable purposes which is created by Clause Tenth of this Will, to be held and disposed of by said Central Hanover Bank and Trust Company as such Trustee upon the trusts, terms and conditions which are set forth in said Clause Tenth."

The defendants as trustees received from the executor of the will the land described in clause fifth together with the buildings thereon and the contents thereof, and as such trustees they opened Hill-Stead Museum in the town of Farmington in accordance with clause fifth and continued to keep open and operate the same through June, 1951. On or about July 1, 1951, the museum was closed by order of the trustees.

From its opening until about July 1, 1951, citizens of the towns of Farmington and Avon and members of the general public visited Hill-Stead Museum and

used and derived benefit from its educational, artistic and other facilities as provided for in the will until its closing made this impossible.

Hill-Stead Museum comprises a large, well-constructed, excellently preserved mansion which was built about the year 1900 and represents a fine type of the residential architecture of that period. It is beautifully located on a knoll in the midst of several acres of lawn and trees, with ready access to the main highway between Farmington and Hartford. It is completely furnished with rare and valuable paintings, engravings, furniture, chinaware and other objects of art which were maintained there by Theodate Pope Riddle, who was herself a noted architect, and by her husband, the late John Wallace Riddle, who had been United States ambassador to Argentina and to Russia. Its art contents and collections are in an appropriate setting which immensely enhances their artistic, historical and educational value.

At all times since its opening there was a substantial attendance and public interest in the Hill-Stead Museum, although it was not publicized except to a minimum degree.

The Hill-Stead Museum is created by clause fifth and is financially provided for by a trust fund created by clause eighth of the will.

Clause tenth of the will is the residuary clause, and the residuary beneficiary of the trust created thereby is The Pope-Brooks Foundation Incorporated, which exists for the benefit of Avon Old Farms School and is the controlling factor of the school in financial and general policies. In the event of termination of the Hill-Stead Museum trust, the museum property described in clause fifth and the trust fund for its benefit under clause eighth would, with minor exceptions, accrue to the benefit of Avon Old Farms School through the Pope-Brooks Foundation.

At a meeting held on or about January 11, 1951, at which all the individual trustees named as defendants were present (except the defendant Craig R. Smith, who was subsequently designated as a trustee by the defendant Central Hanover Bank and Trust Company), a vote was taken as to closing the museum. An affirmative vote of six trustees, namely two-thirds, would have been required to close the museum, but only four voted to close it. Four trustees voted not to close it, namely the defendants Florence Borden Darrach, Lauder Greenway, Annie B. Lewis and F. Latham Emeny; and thereby the trustees determined that the public interest in the museum was sufficient to warrant maintaining it.

Three months later, on or about April 30, 1951, another meeting of trustees was held, and thereupon six of the trustees, namely the defendants Brooks Emeny, F. Latham Emeny, Grace Flandrau, Lauder Greenway, John C. Pope and Craig R. Smith, voted to close the museum and attempted to terminate the trust. Two of the trustees, namely the defendants Florence Borden Darrach and Annie B. Lewis, voted not to close the museum or terminate the trust.

The meeting of April 30, 1951, was held, and the attempt to terminate the Hill-Stead Museum trust was made, without notice to the attorney general of Connecticut as representative of the public interest and without seeking advice of the courts.

The situation had not altered as regards public interest in the museum between the meeting of January 11 and the meeting of April 30, 1951; but at the April meeting, urgent representations were made, particularly by the defendant Brooks Emeny, that the condition of Avon Old Farms School, the residuary beneficiary under clause tenth, was precarious;

that the funds and property allocated to Hill-Stead Museum under clauses fifth and eighth of the will were required for the preservation and benefit of the school; that by closing Hill-Stead Museum its assets and income would become available to the school; and that it was essential to preserve the school rather than to preserve the museum. It was further represented that it was Mrs. Riddle's wish and intent that the museum be sacrificed to the needs of the school notwithstanding that her will made no such provision.

At the time the vote was taken on April 30, the defendant trustees Brooks Emeny and Grace Flandrau were also directors of the Pope-Brooks Foundation, which operates the Avon Old Farms School; and the defendants F. Latham Emeny and Craig P. Smith were actively connected with or interested in the foundation and school. At the time of the vote of April 30, 1951, there existed, and there still exists, a conflict of interests between the Hill-Stead Museum on the one hand and the Pope-Brooks Foundation and Avon Old Farms School on the other; also between the defendants Brooks Emeny, Craig R. Smith, F. Latham Emeny and Grace Flandrau as trustees of the museum and themselves as directors of or actively interested in the foundation and school.

The votes of the defendants John C. Pope, Lauder Greenway and Grace Flandrau to close the museum were cast under a misapprehension of their powers and duties as trustees of the Hill-Stead Museum trust and influenced by the considerations previously stated. The votes of some of the defendants who voted to close the museum at the meeting of April 30 were based upon reasons outside of and conflicting with the interests of Hill-Stead Museum trust, in whose sole interest it was their duty to act.

The discretion accorded the trustees of Hill-Stead by clause fifth of the will with reference to the possibility of closing it is expressly a limited discretion which, although complete within that limitation, admits of no consideration except that of sufficiency of the public interest in the museum. Nevertheless, some of the trustees took other matters into consideration in voting to close and thereby failed to exercise their discretion in accordance with the terms and purposes of clause fifth. The action of some of the trustees in voting to close the museum and in attempting to terminate the Hill-Stead Museum Trust constituted an abuse of discretion on their part as trustees and a failure of that complete good faith towards the Hill-Stead Museum trust and the public required of them as such trustees.

If at the meeting of April 30, 1951, the vote of any one of the six defendant trustees who voted to close the museum for any of the extraneous reasons had not been so cast or had been withheld, the total vote for closing would have been less than two-thirds of the total number of trustees and would have prevented the closing of the museum and the attempt to terminate the trust.

Hill-Stead Museum is unique in that the works of art therein contained are maintained in their original setting and on an appropriate site; and the result of the vote, if carried into effect, would terminate the trust, permanently close the Hill-Stead Museum, scatter its contents, frustrate Mrs. Riddle's beneficent conception of an art center for that section of Connecticut and forever destroy its educational and artistic benefit, to which the citizens of the towns of Farmington and Avon and the general public are entitled, and would work an irreparable injury upon them for which there is no adequate remedy at law.

Some of those voting to discontinue the museum took into consideration their personal ideas of what Mrs. Riddle would wish if she were living; erroneous personal interpretations of the will; future financial difficulties which they feared the museum would have; the financial needs of Avon Old Farms School; that the Hill-Stead Museum should be discontinued in order that the Avon Old Farms School might continue to exist. At the time of the vote on April 30, 1951, the museum was in itself worthy of public interest. There was, in fact, a substantial and sufficient public interest. The trustees knew or should have known this.

All of the trustees of the museum, including those who voted to close it as well as those who voted not to, are honorable ladies and gentlemen. None of them acted as they did because of any selfish motives. All of the directors of the Pope-Brooks Foundation, which operates the Avon Old Farms School, are honorable and public spirited citizens.

Some of the defendants claim that by the use of the words "shall in their absolute discretion determine that there is not sufficient public interest" the plaintiff is barred. Our Supreme Court of Errors in *Greenwich Trust Co.* v. *Converse,* 100 Conn. 15, 26, 27, said: "The intent being clear, the single word 'absolute' could not be allowed to defeat or seriously to impair the execution of the full design of the testatrix. . . . Though the trustee is to be the sole judge, a court of equity will, in a proper case, compel him to sit in judgment, and compel him to execute the power in good faith."

"The extent of the discretion may be enlarged by the use of qualifying adjectives or phrases such as 'absolute,' or 'uncontrolled.' Even the use of such terms, however, does not give him [the trustee] unlimited discretion. . . . The real question is whether it appears that the trustee is acting in that state of

mind in which it was contemplated by the settlor that he should act." 2 Scott, Trusts, p. 987.

The defendants who voted to close the museum contend that the financial aspect of the museum became very important in determining whether or not the museum should be kept open. Upon the evidence I cannot and do not find that the income was not sufficient to keep it open. In addition to this, clause fifth provides for the termination of the trust if the board of trustees of the Hill-Stead Museum, by the affirmative vote of at least two-thirds of the members thereof, shall in their absolute discretion "determine that there is not sufficient public interest in the Museum to warrant continuing to maintain the Hill-Stead Museum as such."

In *Healy* v. *Loomis Institute,* 102 Conn. 410, at pages 418, 421, and 423, the court said: "The findings that the Institute found its income limited of late years, and the disappointingly small enrollment of girls, and the excessive cost of maintaining the girls' department, together with the rapid growth of the boys' department, are obviously the reasons which led the trustees to feel that they were not justified for the present in continuing to use the funds of the Institute in offering courses to girls and to vote to suspend the instruction to girls. . . . Mr. Justice Bradley announced the view of the United States Supreme Court in these words: 'When a charitable trust has been fully constituted, and the funds have passed out of the hands and control of the donors, and into the hands of the proper institution, or organization, intended for its administration the Court of Chancery, or some analogous jurisdiction, becomes its legal guardian and protector, and will take care that the objects of the trust are duly pursued, and the funds rightfully appropriated. . . .' *Printing House* v. *Trustees,* 104 U.S. 711, 727.

"Since the charter requires these trustees to maintain a girls' school as well as a boys' school, they have no power to suspend the girls' school because its limited attendance causes an excessive expenditure per pupil. If this were an adequate ground for their action, they might suspend indefinitely such department, and in the exercise of the same power they might suspend indefinitely the boys' school and conduct a school exclusively for girls. The question is not one of visitorial powers, but one to be determined by the construction of the charter. Unless we are to read into the charter a provision that these trustees may suspend at their discretion the girls' department of the Institute, their power of suspension cannot be found in the charter. We cannot read such a provision into the charter. To do so would plainly defeat the purpose of the founders. The charter determines the kind of an Institute the founders were establishing, and it is the duty of these trustees, in administering the public charity committed to their keeping, to carry into execution the provisions of the charter and the will of the founders, not the Institute they themselves might have founded, but that which the founders established. They must at all times remember that they are administering a public charity 'constituted and established for the free and gratuitous education' of boys and girls. . . . These purposes the trustees cannot be permitted to depart from. Their powers are ample under the charter and the law of the land to carry out the purposes of the founders. Their discretion is not uncontrollable. When they depart from the authority given them in the charter, they abuse the discretion vested in them, and upon proper application the court of chancery will check them in their illegal course and thus preserve unbroken the charter, which is the guide for the trustees and at the same time the embodiment of the wishes and will of the founders."

The issues are found for the plaintiff upon the complaint. The defendants are ordered forthwith to open the Hill-Stead Museum to the public and to maintain and continue the Hill-Stead Museum Trust in accordance with the terms of the will of the late Theodate Pope Riddle.

The defendant Florence Borden Darrach, in addition to filing an answer to the complaint, has filed a "Cross-Bill In Equity By Trustee For Construction And Advice." The same questions, in effect, have been answered herein, in deciding the issues upon the complaint. I have endeavored in this memorandum to include all questions raised by the issues joined upon the cross bill as well as those joined upon the complaint.